Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor

v.

METROPOLITAN DISTRICT COUNCIL OF CARPENTERS, UNITED BROTH-ERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL–CIO.

Civ. A. No. 84–5348.

United States District Court, E.D. Pennsylvania.

May 16, 1985.

Edward T. Ellis, Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

William J. Einhorn, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

VANARTSDALEN, District Judge.

The Secretary of Labor (Secretary) filed suit against defendant Metropolitan District Council of Carpenters, United Brotherhood of Carpenters and Joiners of America, AFL–CIO, alleging violations of section 401(c) and 401(g) of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 481(c), (g). Before the court are the Secretary's motion for summary judgment and motion for a preliminary injunction. The motions will be denied.

Briefly stated, the facts giving rise to the Secretary's suit are as follows. In a mail

ballot election that concluded on June 7, 1984, Edward Coryell was elected president of the Metropolitan District Council. Coryell, who ran as the incumbent, has been president of the Metropolitan District Council since 1981. John C. McCloskey, recording secretary of Local 1856, announced in or about October 1983 that he would run for the office of president against Coryell. A third candidate, William McGugan, also sought that office. Coryell was elected president by a slim margin over McCloskey.

On January 27, 1984, about four months before the election, business agent Michael Dooley, organizer Harrison Langley and the Metropolitan District Council's attorney, with the aid of West Conshohocken Police Chief Joseph Claybourne, confiscated a mailing list from Archibald Allan Associates, a printing company. The mailing list contained the names and addresses of most of the Metropolitan District Council's nine thousand members. The confiscated list was evidently a 1981 copy of the Metropolitan District Council's official membership list, with certain updated information. McCloskey asserts that he obtained the list from a now deceased union member and that it was delivered to Archibald Allan Associates solely in order to have mailing labels printed for his campaign literature.

The officers of the Metropolitan District Council somehow found out about the list and physically retrieved it from the printer with the help of the local police chief. McCloskey filed a civil lawsuit against the individuals involved in confiscating the list, seeking its retrieval, but the Honorable Marvin Katz of this court denied McCloskey's motion for a temporary restraining order and preliminary injunction. *McCloskey v. Dooley*, No. 84–504 (E.D.Pa. February 13, 1984).

It is undisputed that sometime in February 1984, about a week or two after the above incident, McCloskey sought to have campaign literature mailed out to union members through established union procedures. It is disputed when and how many times he made such request or requests.

McCloskey represents that he made two requests, one on February 8, 1984 and the other on February 16, 1984. Defendant claims that a single request was received on February 20, 1984. In either event, McCloskey's February request was denied by Coryell. In a letter dated February 21, 1984, Coryell explained that the reason for denying McCloskey's request was a rule adopted by the Metropolitan District Council at its February 16, 1984 meeting. According to defendant, the rule that was adopted was promulgated pursuant to section 32(c) of the District Council's Bylaws. The rule provided:

> Any announced candidate (upon proper request) will be eligible for authorized mailing labels for mailing literature after April 15, 1984. There will be no limit on the number of mailing labels allowed for candidates.

At the February 16, 1984 District Council delegates meeting, internal union charges that had been filed against McCloskey by Coryell and others were read for the first time, in accordance with the Constitution of the United Brotherhood of Carpenters and Joiners of America (UBCJA). Moreover, union member Dooley reported on his activities in conjunction with the civil suit then proceeding before Judge Katz. Such discussion became a part of the detailed minutes prepared by the Secretary/Treasurer that were sent out to the local unions. The charges against McCloskey were read for the second time at the March 15, 1984 District Council delegate's meeting. At that meeting, George Walish, a member of the General Executive Board of the UBCJA, addressed the delegates. A portion of his address was devoted to a "recent communication from a candidate for office that was distributed by mail to most of the Members of the Metropolitan District Council." A page of the March 15, 1984 minutes contained a summary of Walish's responses to the allegations lodged against the officers of the current District Council in that "communication." The "communication" involved was unquestionably one of McCloskey's campaign letters.

In accordance with the Constitution of the UBCJA, following the two readings of the charges against McCloskey, his case was taken to the trial committee. Two days of hearings were held on March 22 and 29, 1984, before trial committee members Giardinelli, Boyle, Preston and Wheeler, who were selected at random from the standing trial committee. The charges considered by the trial committee were:

Gen. Const. Sec. 55, Para. A(1): Brother McCloskey caused dissension among the members of the United Brotherhood by his misappropriation and misuse of District Council property.

Gen. Const. Section 55, Para. A(7): Brother McCloskey furnished to Archibald Allen [sic] Associates, Inc. an unauthorized person, without the consent of the District Council and its affilitated [sic] Local Unions, a list of the membership of the District Council.

General Constitution Sec. 55, Para. A(8): By distributing a membership list to Archibald Allan Associates, Inc., Brother McCloskey divulged the business of the District Council without its consent.

General Constitution Sec. 55, Para. A(13): By the act described above and the specifications appearing below, Brother McCloskey has violated the obligation.

The trial committee voted 3 to 1 to recommend to the District Council that McCloskey be found guilty of all four charges. The three members who voted guilty voted 2 to 1 to recommend a six-month suspension on each charge, the periods to runs consecutively. The recommendation went to the District Council on April 19, 1984. The council voted 18 to 12 in favor of suspension. The Secretary contends McCloskey was not given, in accordance with the union's Constitution, a chance to address the council before the vote was taken. McCloskey was allowed to plead his case after the vote was taken.

McCloskey was allowed to and did participate in the June 7, 1984 election because the union's Constitution provides that suspension from membership does not become effective during the time for filing or the pendency of an appeal. McCloskey ran for president and lost a close election. He filed an appeal by letter dated June 12, 1984. The International Appeals Committee issued a one-page decision dismissing McCloskey's appeal on January 30, 1985.

In his motion for a preliminary injunction, the Secretary seeks an order preventing the Metropolitan District Council from suspending McCloskey. The Secretary also seeks summary judgment on his claims under section 401(c) and (g) of the LMRDA, 29 U.S.C. § 481(c), (g) and seeks to have this court order a new election to be conducted pursuant to 29 U.S.C. § 482(c).

*Motion for Summary Judgment*

■ The summary judgment standard is well known: "[t]he judgment shall be rendered forthwith if ... there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party, the Secretary in this case, has the burden of showing that there are no genuine issues of material fact that would preclude entry of judgment in his favor as a matter of law. *See Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402, 405 (3d Cir.1981). With regard to issues of fact, all reasonable inferences from the evidentiary material of record must be drawn in favor of the party opposing the motion for summary judgment. *Small v. Seldows Stationery*, 617 F.2d 992, 994 (3d Cir.1980). Conflicts of credibility must not be resolved by the court unless the opponent's evidence is "too incredible to be believed by reasonable minds." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 909 (3d Cir.1984). A response to a properly-supported summary judgment motion may not rest on allegations in the pleadings, but must present significant probative evidence in the form of affidavits, depositions or answers to interrogatories sufficient to create a genuine issue of material fact. Fed. R.Civ.P. 56(e); *Sunshine Books Ltd. v. Temple University*, 697 F.2d 90, 96 (3d Cir.1982).

■ Section 401(c) of the LMRDA provides in pertinent part that labor unions have a duty "to comply with all reasonable requests of any candidate to distribute by mail or otherwise at the candidate's expense campaign literature in aid of such person's candidacy to all members in good standing of such labor organization and to refrain from discrimination in favor of or against any candidate with respect to the use of lists of members...." 29 U.S.C. § 481(c). Section 401(g) provides:

> No moneys received by any labor organization by way of dues, assessment, or similar levy, and no moneys of an employer shall be contributed or applied to promote the candidacy of any person in an election subject to the provisions of this subchapter. Such moneys of a labor organization may be utilized for notices, factual statements of issues not involving candidates, and other expenses necessary for the holding of an election.

29 U.S.C. § 481(g).

The Secretary, in his motion for summary judgment, asserts that defendant violated the quoted sections of the LMRDA as a matter of law by its conduct. The court heard oral argument on the motion following the presentation of evidence on the motion for preliminary injunction. The motion for summary judgment must be denied.

The Secretary concedes that there is an issue of fact regarding McCloskey's alleged February 8, 1984 request to the Metropolitan District Council to mail his campaign literature. Nevertheless, the Secretary asserts that the February 16, 1984 request, considered alone, establishes a violation of section 401(c). I cannot agree.

Section 401(c) provides that "reasonable requests" must be complied with by the union. Historically, determinations of reasonableness are for the trier of fact based upon all the evidence. I cannot, therefore,

determine as a matter of law, based upon "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" that there is no genuine issue of fact as to the reasonableness of McCloskey's request. It may very well be that presentation of all the evidence will reveal that the request was reasonable; however, the court cannot determine it at this time as a matter of law.[1] Moreover, the court also cannot determine, without considering all the evidence, whether the District Council violated section 401(g) (use of union money to promote the candidacy of Coryell) by its use of the minutes of the District Council delegate's meetings.

### Motion for Preliminary Injunction

■ In determining whether to grant preliminary injunctive relief, courts focus on four criteria: (1) the probability of irreparable injury to the moving party in the absence of relief; (2) the possibility of harm to the nonmoving party if relief is granted; (3) the likelihood of success on the merits; and (4) the public interest. *United States v. Price,* 688 F.2d 204, 211 (3d Cir.1982). It is quite apparent that the Secretary's motion for preliminary injunction is tied in with the motion for summary judgment on the section 401(c) and (g) claims. If the Secretary were to prevail on those claims and this court order a new election, as things currently stand, McCloskey's two-year suspension would prevent him from participating in the election, either as a candidate or as a union member.

It should also be apparent that the decision to deny the Secretary's motion for summary judgment substantially reduces the probability of irreparable harm to the moving party, who in this case is the Secretary, not Mr. McCloskey. Because I have denied the motion for summary judgment,

---

1. Because the Secretary's motion for summary judgment is denied, I have not addressed, at this time, the very serious jurisdictional issue of the Secretary's standing to assert a cause of action under Section 401(c). I note that section 401(c) provides that labor unions are under a duty, *"enforceable at the suit of any bona fide candidate* for office in such labor organization in the district court of the United States in which such labor organization maintains its principal office,"* to comply with reasonable requests of candidates. (emphasis added).

the probability of irreparable harm to the Secretary in the absence of relief does not warrant granting preliminary relief. The Secretary's interest in Mr. McCloskey's suspension is directly related to whether the June 7, 1984 election will be set aside and a new election ordered. As I have not yet determined if that will be done, there is no harm to the Secretary in allowing Mr. McCloskey's suspension to stand at this time.

If I had granted summary judgment on the section 401(c) and (g) claims, the probability of irreparable harm to the Secretary would be substantially increased. In that case, preparations for an election would be proceeding but Mr. McCloskey's suspension would prevent a competitive election from taking place. McCloskey's suspension is only relevant to the Secretary if a new election is ordered. Because a new election has not been ordered, McCloskey is not being prevented from doing anything that would result in irreparable harm to the Secretary.

The Secretary suggests that Mr. McCloskey's present suspension, if continued until such time as a new election is ordered, will place him at a great disadvantage even if the court directs that he may be a candidate and fully participate in union activities and in the reelection campaign. Although this is a reasonable position, the Secretary agrees that the better procedure would be to have a final early determination on the merits on the issue of whether a new election should be ordered, and, if so, whether the "suspension" of Mr. McCloskey should be vacated or relief be provided whereby Mr. McCloskey may be an effective and viable candidate.

The court recognizes the urgency of this matter to the parties and as both sides represented during the preliminary injunction hearing that little or no discovery was needed, this case will be listed for disposition on the merits for June 11, 1985. In the meantime, the parties are to go forward with whatever discovery they need.