**Gene HAM, Appellant,**

v.

**William French SMITH, et al.**

**No. 79–2167.**

United States Court of Appeals,
District of Columbia Circuit.

Submitted Without Oral Argument.

Decided April 30, 1981.

Gene Ham, pro se.

Charles F. C. Ruff, U. S. Atty., John A. Terry, John R. Fisher, and Pamela M. Sayad, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellees.

Before EDWARDS and GINSBURG, Circuit Judges, and JOYCE HENS GREEN *, United States District Judge for the District of Columbia.

Opinion PER CURIAM.

PER CURIAM:

In this Freedom of Information Act (FOIA) suit, the district court granted summary judgment against a pro se plaintiff, recently released from prison, without first explaining the nature of the summary judgment motion to the plaintiff or fully considering whether the plaintiff had received adequate time to respond to the defendant's motion. We conclude that the district court should have deferred disposition of the summary judgment motion pending further assurance that plaintiff had been accorded adequate time to respond and understood the risk attending failure to respond. Accordingly, we reverse.

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a). *District Judge* Joyce Hens Green did not participate in the disposition of this case.

## I. *Facts*

In 1977, while he was imprisoned in South Carolina, Gene Ham submitted to the FBI an FOIA request for all information concerning him. The FBI released numerous documents, but deleted information from some of the documents. After an administrative appeal the FBI released additional information, but continued to delete material that it claims consists of names of FBI agents, names of persons of investigative interest other than Ham, the identity of a cooperating nonfederal law enforcement officer, the identity of a confidential source, confidential information furnished by a confidential source, names of persons interviewed, information supplied by local law enforcement agencies, and information furnished by informants on a regular basis. The FBI defended these deletions on the ground that the information was protected by exemptions 7(C) and 7(D) of FOIA.[1]

In January 1979, while still imprisoned in South Carolina, Ham filed this pro se action seeking release of the withheld information. At a status hearing on February 22, 1979, Government counsel told the district judge that Ham, who was not present, had requested appointment of counsel. The district court denied this request, finding that there is no provision for the appointment of counsel in FOIA cases.[2]

Ham was released from prison on March 23, 1979. He neglected, however, to give the district court prompt notice of his address change. Accordingly, a Government motion to dismiss the complaint or grant summary judgment was mailed on April 22, 1979, to the prison where Ham had been incarcerated. Ham apparently did not receive the motion at that time.

On May 14, 1979, Ham filed an address change with the district court. Because of this notice, the district judge directed the Government to mail another copy of the summary judgment/dismissal motion to Ham. This was done during the second week of July. In a letter notarized August 23, 1979, however, Ham informed the district court that he had not received any copy of the Government's motion until August 10. Accordingly, he requested an extension of time so that he could prepare a proper reply.[3]

In an order and memorandum opinion filed August 30, 1979, the district court denied Ham's motion for an extension of time, treated the Government's motion as conceded,[4] and granted summary judgment for the Government. Alternatively, the court found that the Government's statement of points and authorities, the Government's supporting affidavits, and the entire record showed that there were no genuine issues of material fact. Based on the facts in the record, the court concluded that the FBI had properly invoked exemptions 7(C) and 7(D) since "[n]on-disclosure of the withheld material is necessary to protect the personal privacy of certain individuals and to protect the integrity of FBI investigative processes." *Ham v. Bell*, Civil Action No. 79–10082, slip op. at 2 (D.D.C. Aug. 30, 1979). Ham, still acting pro se, appealed the district court's grant of summary judgment.

## II. *Discussion*

■ This court has recognized that district judges should accord special attention

---

1. Those exemptions protect

   investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... (C) constitute an unwarranted invasion of personal privacy, [or] (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source.

   5 U.S.C. § 552(b)(7)(C), (D) (1976).

2. Ham does not challenge this ruling on appeal.

3. Ham also informed the court that he had been unable to retain counsel and renewed his request for appointment of counsel. The court once again denied this request.

4. Rule 1–9(d) of the Rules of the United States District Court for the District of Columbia permits the court to treat a motion as conceded if the opposing party does not file an opposition within ten days after service of the motion or "such other time as the court may direct."

to pro se litigants faced with summary judgment motions. In *Hudson v. Hardy*, 412 F.2d 1091 (D.C. Cir. 1968), the court held that before granting summary judgment against a pro se imprisoned plaintiff, the district court "as a bare minimum" should give the plaintiff "fair notice of the requirements of the summary judgment rule." *Id.* at 1094. This notice should include an explanation that a failure to respond to an adverse party's motion for summary judgment may result in the grant of the motion. *Id.* It is true that the plaintiff in *Hudson* was imprisoned at the time summary judgment was granted, while Ham was released from prison shortly before the Government filed its motion for dismissal or summary judgment. That circumstance, we believe, should not affect the application of *Hudson* to the present case. The rationale of *Hudson* is that a pro se imprisoned litigant suffers handicaps that may impair the effective prosecution of his claim. A pro se plaintiff, upon his release from prison during the course of litigation, is likely to be saddled with similar handicaps and therefore should receive an explanation of the risks attending failure to respond to a summary judgment motion.[5]

5. After he received the Government's answer to his complaint, Ham wrote a letter to the district judge protesting that he had not received the answer in time to file a reply. The judge's law clerk answered Ham's letter, explaining that (absent a court order to do so) a plaintiff does not reply to a defendant's answer. The clerk went on to warn Ham that he should "respond within ten calendar days of the date of service to any motions filed by the defendant." Joint Appendix (J.A.) 8. The clerk also noted that the Government had indicated that it would file a motion for summary judgment by April 24, 1979.

While the law clerk's letter cautioned Ham that he should respond to Government motions promptly, we do not believe it met the standard prescribed by *Hudson*. The letter was written before the Government filed its summary judgment motion. A general warning does not have the immediacy of a specific instruction accompanying motion papers. More important, the law clerk's letter did not explain the nature of summary judgment to Ham nor did it inform him that a failure to respond to a summary judgment motion might result in the entry of judgment against him.

The district court's failure to provide such an explanation is aggravated in this case by the court's denial of Ham's request for an extension of time. Local court rules require a party to file an opposition to a summary judgment motion within ten days after service of the motion. United States District Court for the District of Columbia Rule 1–9(d). Rule 6(e) of the federal rules adds three days to this period when, as in this case, service is made by mail. Ham's response to the Government's summary judgment motion, therefore, was due within thirteen days after the motion was mailed to Ham in July 1979.[6]

Ham's August 23 letter, however, stated that he had not received a copy of the Government's motion until August 10, 1979, and that he needed time to prepare a proper response. If Ham's claim was true, it should count as "excusable neglect" for his failure to oppose the motion within thirteen days of the July service.[7] Moreover, if Ham received the Government's motion on August 10, his August 23 request for an extension of time was reasonably prompt, especially for a pro se litigant. *Cf. Tarantino v. Eggers*, 380 F.2d 465, 468 (9th Cir. 1967) (when a pro se imprisoned plaintiff

6. Service of a motion is complete when the motion is mailed. Fed.R.Civ.P. 5(b).

7. When, as here, a request for enlargement of time is made after expiration of the original time period, the district court may grant the request if it is made in the form of a motion and the movant shows that "the failure to act was the result of excusable neglect." Fed.R.Civ.P. 6(b)(2). The definition of excusable neglect "should depend in part upon the importance of the matter involved and the prejudice, if any, to the other party." *Coady v. Aguadilla Terminal Inc.*, 456 F.2d 677, 678 (1st Cir. 1972). In this case, the district court treated Ham's request as a motion. An extension of time was important to Ham, since if he did not respond to the Government's motion he risked entry of judgment against him, and we can discern no prejudice to the Government if an extension of time had been granted. We believe, therefore, that if Ham did not receive the Government's motion until August 10, his failure to respond within thirteen days of the July service date was "excusable neglect."

"makes as prompt a response as may reasonably be expected ... the strict time limits of [a local rule requiring response within five days] ought not to be insisted upon"). Under these circumstances, it was an abuse of discretion for the district court to deny Ham's request without investigating whether he had in fact received the Government's motion before August 10.

The Government urges that, even if pro se litigants in Ham's position generally should be given clear information concerning court procedures, we should affirm the district court's judgment in this case because Ham's suit is frivolous. We decline, however, to address the merits of the lawsuit before Ham has had an opportunity to answer the Government's arguments. Since the district court's swift disposition deprived Ham of that opportunity, we reverse and remand.

■ We note, finally, that on remand the Government should remedy a defect in its Statement of Material Facts that may have further impeded Ham's ability to respond to the summary judgment motion. The Government's statement does not set out the undisputed material facts; instead, it incorporates by reference portions of affidavits previously submitted to the court. In *Gardels v. CIA*, 637 F.2d 770 (D.C. Cir. 1980), this court held that a Government Statement of Material Facts that merely incorporated by reference several Government affidavits was insufficient to satisfy local district court rule 1–9(h).[8] We recognize that *Gardels* did not lay down a general rule requiring remand whenever a party's Statement of Material Facts merely incorporates by reference information from previously submitted affidavits. As in *Gardels*, however, this case presents special circumstances that warrant "strict compliance" with rule 1–9(h). *Gardels*, 637 F.2d at 773. Ham is a pro se litigant who may have difficulty comprehending the papers that accompany a motion for summary judgment. A Statement of Material Facts that sets out concisely, and in one place, all of the facts that the Government contends are undisputed is a valuable aid to such a litigant. On remand, therefore, the Government should supply Ham with a rule 1–9(h) statement that sets out, without incorporation, the facts as to which it contends there is no genuine issue.

### Conclusion

We remand to the district court for fresh consideration of the Government's summary judgment motion. After the Government has submitted an adequate Statement of Material Facts, the district court should explain the nature of the summary judgment motion to Ham and should allow him sufficient time to respond. As noted above, we express no opinion on the merits of the Government's motion.[9] Consideration of the merits here, as in the district court, should await a full airing of the arguments of both parties.

*Reversed and remanded.*

---

8. That rule requires a party moving for summary judgment to submit "a statement of the material facts as to which the moving party contends there is no genuine issue, and [to] include therein references to the parts of the record relied on to support such statement."

9. We also express no opinion on whether the district court, as Ham urges, should have examined the withheld material *in camera*. This court has held that *in camera* inspection is discretionary in FOIA cases. *Mead Data Central, Inc. v. United States Department of the Air Force*, 566 F.2d 242, 262 (D.C. Cir. 1977). We recently identified the factors that should guide exercise of this discretion. *Allen v. CIA*, 636 F.2d 1287, 1298–99 (D.C. Cir. 1980). After the district court has received the Government's new Statement of Material Facts, as well as Ham's response to the Government's motion, the court should decide anew whether this case calls for an *in camera* inspection.