Harlan L. **JACOBSEN,**
Plaintiff-Appellant,

v.

Richard **FILLER,** et al.,
Defendants-Appellees.

No. 84–1603.

United States Court of Appeals,
Ninth Circuit.

Submitted on Briefs July 8, 1985 *.

Decided May 29, 1986.

* The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 3(f) and Fed.R.App.P. 34(a).

Harlan L. Jacobsen, in pro. per.

Donald O. Loeb, Asst. City Atty., Scottsdale, Ariz., for defendants-appellees.

Appeal from the United States District Court for the District of Arizona.

Before DUNIWAY, and REINHARDT, Circuit Judges and RYMER, District Judge.**

RYMER, District Judge.

This case was brought by Harlan L. Jacobsen against the City of Scottsdale and six city council members as well as against Scottsdale's Mayor, William Jenkins; the City Attorney, Richard Filler, and Donald Loeb, an Assistant City Attorney. The complaint, which alleges that the dismantling and confiscation of Jacobsen's newspaper racks violates 42 U.S.C. § 1983, is only a single chapter in the parties' protracted struggle over the marketing of the semimonthly tabloid newspaper "Single Scene." During the course of the feud, Jacobsen has been represented by counsel on a number of occasions, and he retained legal counsel in the early stages of the present dispute. Jacobsen elected to represent himself at the time he filed the complaint, however, and he has continued to appear *in propria persona* throughout.

Jacobsen raises two issues on appeal. First, he contends that the district court committed error when it granted the city council members' motion for partial summary judgment because of his failure to file any response to the motion. Second, he argues that granting Loeb's motion for summary judgment was inappropriate in that the motion raises genuine issues of material fact not susceptible of resolution under Fed.R.Civ.P. 56. Because we believe that both summary judgement motions were properly granted, we affirm.

## I. *The City Council's Motion*

On July 3, 1980, the six Scottsdale city council members moved for partial summary judgment and noticed the motion for hearing under Arizona Local Rule 11(e).[1] In support of their motion, the defendants filed a "Rule 11(h) statement"[2]

** Honorable Pamela Ann Rymer, United States District Judge, Central District of California, sitting by designation.

1. Arizona Local Rule 11(e) [later redesignated as Local Rule 11(f)] provides in pertinent part:

    Any party desiring oral argument shall file with his motion or response a notice to that effect setting forth therein the date, time, and courtroom for the hearing. The time of the hearing shall be such as to give each party sufficient time to comply with this Rule and to allow the Court at least five (5) days additional prior to such hearing.

2. Arizona Local Rule 11(h) [now Local Rule 11(i)] states in part:

    Any party filing a motion for summary judgment shall set forth separately from the memorandum of law, and in full, the specific facts on which he relies in support of his motion. The specific facts shall be set forth in serial fashion and not in narrative form. As to each fact, the statement shall refer to a specific portion of the record where the fact may be found (i.e., affidavit, deposition, etc.). Any party opposing a motion for summary judgment must comply with the foregoing in setting forth the specific facts, which the opposing party asserts, including those facts

setting forth the specific facts upon which they intended to rely and the evidence in the record which supported their claim. Jacobsen did not respond to the motion with a written opposition, nor did he submit admissible evidence as required by Local Rule 11(h) and Fed.R.Civ.P. 56(e). However, he contends that he did not know that he had to do these things.[3] Urging that rules applicable to *pro se* prisoners should be extended to all *pro se* litigants, *see, e.g., Moore v. Florida,* 703 F.2d 516 (11th Cir. 1983); *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir.1975); *Hudson v. Hardy,* 412 F.2d 1091 (D.C.Cir.1968), Jacobsen argues that it

which establish a genuine issue of material fact precluding summary judgment in favor of the moving party.

**3.** Jacobsen appears to make two separate arguments in defense of his failure to respond: first, that as a litigant *in forma pauperis* he should have been notified of Rule 56's requirement that he file affidavits or other evidentiary matter; and second, that he reasonably relied upon the setting of oral argument in the case to conclude that he would be able to put on evidence at the time of the hearing.

**4.** It is the element of "choice" which most clearly distinguishes the *pro se* prisoner cases from the suit at bar. The leading "fair notice" prisoner case, *Hudson v. Hardy,* first acknowledged that "in the ordinary civil case, appellant's failure to respond by affidavit might have warranted the entry of summary judgment against him." *Hudson,* 412 F.2d at 1094. However, *Hudson* concluded that an exception should be made for a prisoner unrepresented by counsel who, because of the "handicaps ... detention necessarily imposes upon a litigant," probably would be unable to retain counsel even if he had the financial means to do so. *See id.* (quoting *Phillips v. United States Board of Parole,* 352 F.2d 711, 713 (D.C.Cir.1965) ). The large numbers of published decisions involving prisoners appearing *in forma pauperis* support the conclusion that an inmate's choice of self-representation is less than voluntary; and, when that unwilling self-representation is coupled with the further obstacles placed in a prisoner's path by his incarceration—for example, his limited access to legal materials, *Moore,* 703 F.2d at 520, and to sources of proof, *Hudson,* 412 F.2d at 1095—it seems appropriate to apply the requirements of the summary judgment rule with less than "strict literalness." *Hudson,* 412 F.2d at 1094.

The dissent would extend *Moore; Roseboro; Ham v. Smith,* 653 F.2d 628 (D.C.Cir.1981); and *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir.1982)—

was the district court's duty to advise him of the measures he should take to oppose the defendants' motion; and that it was unfair to enter summary judgment without having done so.

We reject Jacobsen's argument, for a number of reasons. First and foremost is that *pro se* litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record. Trial courts generally do not intervene to save litigants from their choice of counsel, even when the lawyer loses the case because he fails to file opposing papers. A litigant who chooses[4] *himself* as legal representa-

all cases involving *pro se* prisoner litigants—to ordinary civil actions and argues that those cases, with the possible exception of *Ham,* were not confined to *pro se* prisoner plaintiffs. The District of Columbia Circuit in *Ham* explicitly addressed itself to the unique problems of prisoner *pro se* litigants. "[A] pro se imprisoned litigant suffers handicaps that may impair the effective prosecution of his claim. A pro se plaintiff, upon his release from prison during the course of litigation, is likely to be saddled with similar handicaps and therefore should receive an explanation of the risks attending failure to respond to a summary judgment motion." *Ham,* 653 F.2d at 630. *Lewis* and *Moore* also addressed these unique handicaps and premised their analyses on these handicaps. "Pro se prison inmates, with limited access to legal materials, occupy a position significantly different from that occupied by litigants represented by counsel." *Moore,* 703 F.2d at 520; *see also Hudson,* 412 F.2d at 1094 ("[w]e have recognized ... that the requirements of the summary judgment rule may not fairly be applied 'with strict literalness' to a prisoner unrepresented by counsel and subject to the 'handicaps * * * detention necessarily imposes upon a litigant.'" (quoting *Phillips,* 352 F.2d at 713) ). In *Lewis,* 689 F.2d at 102, the Seventh Circuit noted:

It would not be realistic to impute to a prison inmate (unless, like the 'former law professor' of whom this court spoke in *Maclin v. Freake,* 650 F.2d 885, 888 (7th Cir.1981) (per curiam), the prisoner has legal training) an instinctual awareness that the purpose of a motion for summary judgment is to head off a full-scale trial by conducting a trial in miniature, on affadivits, so that not submitting counter affadavits is the equivalent of not presenting any evidence at trial.

While *Roseboro* did not explicitly address the peculiar problems faced by prisoner *pro se* litigants, that was a one-page, *per curiam* opinion that cited *Hudson,* 412 F.2d at 1094, which did address itself to these unique difficulties.

tive should be treated no differently.[5] In both cases, the remedy to the party injured by his representative's error is to move to reconsider or to set aside;[6] it is not for the trial court to inject itself into the adversary process on behalf of one class of litigant.[7]

Imposing an obligation to give notice of Rule 56's evidentiary standards would also invite an undesirable, open-ended partic-ipation by the court in the summary judgment process.[8] It is not sensible for the court to tell laymen that they must file an "affidavit" without at the same time explaining what an affidavit is; that, in turn impels a rudimentary outline of the rules of evidence.[9] Unlike the conversion of a 12(b)(6) motion into a motion for summary judgment, which only requires notice of what the motion now *is*,[10] Jacobsen's pro-

---

**5.** As the court put it in *United States v. Pinkey,* 548 F.2d 305 (10th Cir.1977):

The hazards which beset a layman when he seeks to represent himself are obvious. He who proceeds *pro se* with full knowledge and understanding of the risks does so with no greater rights than a litigant represented by a lawyer, and the trial court is under no obligation to become an "advocate" for or to assist and guide the *pro se* layman through the trial thicket.

548 F.2d at 311. *See also Dozier v. Ford Motor Co.,* 702 F.2d 1189, 1194 (D.C.Cir.1983); *Birl v. Estelle,* 660 F.2d 592, 593 (5th Cir.1981); *Barnes v. United States,* 241 F.2d 252 (9th Cir.1956).

**6.** Outside the bounds of the lawsuit, parties with retained counsel also may have the remedy of a malpractice action. However, such a suit does not entirely compensate for loss of the opportunity to obtain redress on the merits, particularly where, as here, the *pro se* litigant seeks declaratory or injunctive relief.

**7.** Besides favoring unrepresented litigants over badly represented ones, Jacobsen's suggestion would require the trial court to help one side to a lawsuit rather than another solely because of the status of their legal representation. Doing so necessarily implicates the court's impartiality and discriminates against opposing parties who do have counsel.

**8.** This problem has not been addressed in the *pro se* prisoner cases. The most explicit description of what constitutes "sufficient" notice may be found in *Roseboro v. Garrison,* 528 F.2d 309, 310 (4th Cir.1975), which states that the litigant should "be advised of his right to file counter-affidavits or other responsive material and alerted to the fact that his failure to so respond might result in the entry of summary judgment against him." However, it is not clear from the opinion whether the notice need consist of little more than that statement (*e.g.,* "you are advised that Rule 56 requires you to file counter-affidavits or other admissible evidence if you wish to oppose the motion; and the failure to do so will result in the entry of summary judgment against you"); or whether it is necessary to give a somewhat fuller explanation of "counter-affidavits" and "other admissible material"; or whether the notice should vary depending upon the court's assessment of the litigant's knowledge and intelligence.

**9.** For example, Jacobsen apparently intended to offer only his own testimony as evidence, and there is no showing that he had any personal knowledge of the city council members' participation in the scheme (indeed, the later summary judgment motion involving Loeb suggests that he did not).

**10.** Because the notice requirement found to be implicit in the last sentence of Fed.R.Civ.P. 12(b)(6) merely requires the court to "notice" the motion the way the parties usually do under Rule 56(c), and because Jacobsen was given specific notice that it was a summary judgment motion, cases such as *Garaux v. Pulley,* 739 F.2d 437 (9th Cir.1984) and *Davis v. Zahradnick,* 600 F.2d 458 (4th Cir.1979) do not apply to the present case. We note also that Garaux, who appeared in pro per, was at the time a prisoner at San Quentin Prison. To require that the notice of Rule 12(b) (which must be applied to all parties and which admittedly is a "highly technical requirement[ ]" of the federal rules, *Garaux,* 739 F.2d at 439) be even more stringently construed in the case of a *pro se* litigant who may be unschooled in law, does not implicate the court's impartiality as would a requirement that the court school one side in the techniques for opposing a motion for summary judgment.

The dissent also cites *Borzeka v. Heckler,* 739 F.2d 444 (9th Cir.1984); *Sherman v. Yakahi,* 549 F.2d 1287 (9th Cir.1977); *Hansen v. May,* 502 F.2d 728 (9th Cir.1974); and *DeWitt v. Pail,* 366 F.2d 682 (9th Cir.1966) for the proposition that courts have a duty, recognized by this Circuit, to ensure that *pro se* litigants do not lose their right to a hearing due to their ignorance of technical procedural requirements. These cases are inapposite for similar reasons. In *Borzeka,* 739 F.2d at 447, we held that failure to comply with Fed.R.Civ.P. 4(d)(5)'s personal service requirement

does not require dismissal of the complaint if (a) the party that had to be served personally received actual notice, (b) the defendant would suffer no prejudice from the defect in service, (c) there is a justifiable excuse for the

posal requires advice as to what the motion must *mean.* To give that advice would entail the district court's becoming a player in the adversary process rather than remaining its referee.

Finally, even if a substantive notice requirement were desirable, it should be enacted through formal amendment rather than piecemeal adjudication. Rule 56's separate notice provision (*compare* Rule 56(c) *with* Rule 6(d)) and description of summary judgment (*compare* Rule 56(e)[11] *with* Rule 12(b)) indicate that the Supreme Court and its Advisory Committee have considered the special problems raised by the summary judgment procedure and, by

failing to require specific notice of the nature of summary judgment, have concluded that the present federal rules (particularly when amplified by local rules such as Arizona Local Rule 11(h))[12] already apprise litigants of their summary judgment obligations. Requiring additional notice to *pro se* litigants would be an accretion onto Rule 56(c), not an interpretation of it;[13] and as an ad hoc amendment it would not be standardized, codified, or subject to collective decision making.

For all of these reasons, we decline to extend the *Hudson* rule and conclude that the district court did not have to inform

failure to serve properly, and (d) the plaintiff would be severely prejudiced if his complaint were dismissed.
Regarding the third factor, it was noted that "appellant was proceeding *pro se* when the defective service was made. We are generally more solicitous of the rights of *pro se* litigants, particularly when technical jurisdictional requirements are involved." *Id.* at 447 n. 2. Again, merely taking the *pro se* status of litigants into account in determining compliance with technical pleading or procedural rules does not require the district court to inform the litigant of *how* to comply with the federal rules rules regarding service. *Sherman* simply stated that the liberal pleading requirements set out in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) in a motion to dismiss for failure to state a claim apply with even greater force when the complaint is by a *pro se* litigant. *Sherman,* 549 F.2d at 1290, *accord, Hansen,* 502 F.2d at 730; *DeWitt,* 366 F.2d at 685. These holdings likewise do not require the district court to *instruct* litigants on proper pleading.

**11.** Rule 56(e) states:
   Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.
   Sworn or certified copies of all papars or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this

rule, must set forth specific facts showing that there is a genuine issue for trial.
   If he does not so respond, summary judgment, if appropriate, shall be entered against him.
This rule, which was referred to by the number in the council's moving papers, makes it clear that (1) the failure to respond will result in the entry of summary judgment against the nonmoving party; (2) the response must set forth specific facts, either by way of affidavit or by the other means specified in the rule (depositions, answers to interrogatories, sworn or certified copies of papers); and (3) the affidavits must be based on personal knowledge and be admissible in evidence.

**12.** The provisions of Local Rule 11(h) make it impossible to conclude that Jacobsen reasonably believed that he did not need to file a written response. The rule states that any party moving for summary judgment "shall set forth separately from the memorandum of law, and in full, the specific facts on which he relies;" that "the specific facts shall be set forth in serial fashion and not in narrative form;" and that "as to each fact, the statement shall refer to a specific portion of the record where the fact may be found." The rule then provides that "any party opposing a motion for summary judgment must comply with the foregoing." Jacobsen was apprised of Local Rule 11(h) through the council's filing of their "Rule 11(h) statement"; by its terms the rule makes it clear that he had to file a written statement of facts in opposition to the motion.

**13.** This is another important way in which the present case differs from the cases construing the notice required by Rule 12(b)(6) and 56(c). Those decisions simply interpret the meaning of Rule 12(b)(6)'s requirement of "reasonable opportunity"; Jacobsen's proposal has no basis in the language of any federal rule.

Jacobsen of the need to file affidavits or other responsive matter before granting summary judgment against him.

## II. *Loeb's Motion*

■ On September 8, 1983, defendant Donald Loeb moved for summary judgment and filed an affidavit stating that he had no prior knowledge of, nor did he order, authorize, or participate in the actions alleged in the complaint. Jacobsen responded with three affidavits, one his own and two from attorneys who had worked for him. The district court granted the motion in a minute order filed November 14, 1985; Jacobsen appeals on the ground that his counter-affidavits create a genuine issue of triable fact as to Loeb's participation in the alleged events.[14]

Summary judgment under Rule 56 is not appropriate where genuine issues of material fact remain to be tried. *Occidental Engineering Co. v. INS*, 753 F.2d 766, 770 (9th Cir.1985); *see generally* Schwarzer, "Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact," 99 F.R.D. 465 (1984). In this case, Jacobsen's affidavits fail to raise such an issue. Jacobsen's allegations that Loeb was involved in prior litigation with him and that Loeb threatened him with further action do not show that Loeb actually was involved in or knew about the confiscation of the newsracks. The same can be said for attorney Moen's statement that he had negotiated with Loeb after the first and before the second incident; even if true, Loeb's knowledge of Jacobsen's complaint does not raise a genuine issue whether Loeb knew about the subsequent actions of other city employees. Finally, Jacobsen's deposition testimony about what he read in a newspaper article (not introduced into evidence) and what his attorneys told him is not based on personal knowledge and is inadmissible hearsay. Therefore it fails to raise a genuine issue sufficient to withstand summary judgment.

Accordingly, the entry of summary judgment against Jacobsen and in favor of the city council members and Donald Loeb is AFFIRMED.

REINHARDT, Circuit Judge, dissenting:

The majority's refusal to recognize the right of *pro se* litigants to be adequately informed of their procedural obligations prior to the entry of summary judgment against them rests on several false factual assumptions and on an inaccurate interpretation of the law of this and other circuits. Because I believe that our previous cases recognize the rights of *all pro se* litigants to the procedural protection of the court, and because I believe that affording such protection serves the interest not only of the litigants but also of the court itself, I respectfully dissent.

The majority opinion creates two classes of indigent litigants, those who are poor and law abiding, and those who are poor and not. It then affords lesser rights and protections to the former. In this respect, the majority's actions are contrary to the view our circuit has previously expressed. Moreover, its opinion rests on two false factual assumptions: that *pro se* status is voluntary and that the appellant in this case received adequate notice of his obligation to respond in writing to appellee's summary judgment motion. I address each assumption in turn.

The majority portrays a litigant's *pro se* status as the product of choice, whereas such status is most often the result of necessity. The majority equates a litigant's so-called "choice" to appear *pro se* with other litigants' choice of counsel. The comparison ignores the economic reality

14. Jacobsen also contends that summary judgment was inappropriate as a matter of law because (1) Loeb was part of a conspiracy to deprive Jacobsen of his constitutional rights, and (2) he had an affirmative duty to advise other city employees that they should not pursue their course of action. However, conspiracy is not alleged in the complaint, and Jacobsen has not suggested that Loeb had any control or direction over the city employees involved in the confiscation or dismantling of the newsracks. Therefore neither argument supports reversal of the district court.

that lies behind most *pro se* appearances. Given the disparity in legal skills and knowledge that exists between a layman and a lawyer, few litigants will "choose" to prosecute or defend a suit without representation if they are able to hire a lawyer.

Contrary to the majority opinion, appellant did not receive adequate notice of his duty to respond in writing to appellee's motion for summary judgment. Other circuits have assumed that the filing of a motion for summary judgment does not provide notice of the duty to submit documentary materials, without having explicitly analyzed the language either of Federal Rule of Civil Procedure 56 or of the relevant Local Rules. *See, e.g., Moore v. State of Florida,* 703 F.2d 516, 520–21 (11th Cir. 1983); *Lewis v. Faulkner,* 689 F.2d 100, 101–02 (7th Cir.1982); *Ham v. Smith,* 653 F.2d 628, 630–31 (D.C.Cir.1981); *Roseboro v. Garrison,* 528 F.2d 309, 310 (4th Cir. 1975). Such an analysis merely confirms that assumption, however. The responding affidavit requirement is not set out explicitly in either Fed.R.Civ.P. 56 or in Arizona Local Rules 11(e) and 11(h), but rather must be inferred somewhat obliquely from the language and structure of those rules. Although practicing attorneys can be expected to draw the proper inferences from the language of legal rules, the court can not presume that laymen possess such interpretive skills.

The Seventh Circuit in *Lewis v. Faulkner, supra,* supported its finding that a summary judgment motion in and of itself provides inadequate notice of the affidavit requirement with an analysis of "lay intuition" of civil procedure. *Id.,* 689 F.2d at 102. A layman expects that the filing of a complaint triggers an answer, after which the trial is conducted. The court refused to impute to *pro se* litigants "an instinctual awareness that the purpose of a motion for summary judgment is to head off a full-scale trial by conducting a trial in miniature, on affidavits, so that not submitting counter affidavits is the equivalent of not presenting any evidence at trial." *Id.* In the present case, not only was appellant not on notice of his obligation to submit

counter affidavits, but his inference from the setting of oral argument that he would be entitled to present oral argument if he appeared in court on that date was entirely reasonable. Nothing in the calendering of oral argument suggests the existence of an undisclosed condition precedent. Appellant's appearance at court on the proper day, prepared to present his case, demonstrated his good faith reliance on the setting of oral argument as notice of the relevant legal procedure.

The majority's reading of the law is incorrect as well. This circuit recognizes that courts have a duty to ensure that *pro se* litigants do not lose their right to a hearing on the merits of their case due to ignorance of technical procedural requirements. *See, e.g., Garaux v. Pulley,* 739 F.2d 437, 439–40 (9th Cir.1984); *Borzeka v. Heckler,* 739 F.2d 444, 447 n. 2 (9th Cir. 1984); *Sherman v. Yakahi,* 549 F.2d 1287, 1290 (9th Cir.1977); *Hansen v. May,* 502 F.2d 728, 730 (9th Cir.1974); *Dewitt v. Pail,* 366 F.2d 682, 685 (9th Cir.1966). We have not restricted that protection to prisoner litigants. To the contrary, we justify the extension to *pro se* prisoner litigants of greater procedural protection than is afforded to litigants with counsel on the ground not that they are prisoners, but rather that they are unrepresented. *Cf. Sherman v. Yakahi,* 549 F.2d 1287, 1290 (9th Cir.1977) (pleadings in employee's *pro se* discrimination suit must be viewed under a less stringent standard than if drafted by lawyers) *with Hansen v. May,* 502 F.2d 728, 730 (9th Cir.1974) (habeas corpus suit) ("Pleadings drafted by laymen, proceeding *in propria persona,* are to be interpreted by the application of less rigid standards than those applicable to formal documents prepared by lawyers."). *See also, Borzeka v. Heckler,* 739 F.2d 444, 447 n. 2 (9th Cir.1984) (appeal from termination of disability benefits) ("We are generally more solicitous of the rights of *pro se* litigants, particularly when technical jurisdictional requirements are involved.").

We already require a court to advise a *pro se* litigant of its intention to convert

*sua sponte* a motion to dismiss into a summary judgment motion. *Garaux v. Pulley,* 739 F.2d 437, 439–40 (9th Cir.1984). We emphasized in *Garaux* that "[d]istrict courts must take care to insure that *pro se* litigants are provided with proper notice regarding the complex procedural issues involved in summary judgment proceedings." *Id.,* 739 F.2d at 439. The need to provide *pro se* litigants with proper notice of summary judgment procedures is just as great when the opposing party moves for summary judgment as when the court *sua sponte* converts a motion to dismiss into a motion for summary judgment, since a party's motion for summary judgment does not in and of itself provide notice of the affidavit requirement, and the risk that "enforcing" a "highly technical requirement[] ... might result in a loss of the opportunity to prosecute or defend a lawsuit on the merits," *id.,* is identical in both procedures.

The reasoning of *Garaux* compels us to acknowledge a *pro se* litigant's right to effective notice of summary judgment procedures when the opposing party moves for summary judgment. The majority attempts unsuccessfully to distinguish *Garaux* on the ground that we there required notice only "of what the motion now *is*," whereas appellant asks us to require notice of "what the motion must *mean*," *supra,* at 1365, (emphasis in original). The distinction is artificial. In *Garaux,* we required that a *pro se* plaintiff receive "specific notice, and a fair opportunity to respond," *id.,* 739 F.2d at 440, in order to insure that such plaintiffs do not inadvertently forfeit their right to a judicial hearing. That purpose would be thwarted if the district court merely labeled the summary judgment motion as such. As the Seventh Circuit noted in *Lewis v. Faulkner,* 689 F.2d at 102, "[a] reasonable opportunity to respond [to a motion for summary judgment] presupposes notice. Mere time is not enough, if knowledge of the consequences of not making use of it is wanting." Implicit in *Garaux*'s notice requirement, therefore, is a requirement that the court instruct a *pro*

*se* litigant on the consequences of a summary judgment motion.

Other circuits have recognized that a *pro se* litigant is entitled to notice of the consequences of failure to submit evidentiary material in response to a motion for summary judgment. *See, e.g., Roseboro v. Garrison, supra, Moore v. State of Florida, supra, Lewis v. Faulkner, supra, Ham v. Smith, supra.* Although the litigants in these cases were all prisoners, the holdings are not strictly confined to prisoner litigants, with the possible exception of the D.C. Circuit. The Fourth Circuit in *Roseboro* framed its notice rule in terms of all *"pro se* plaintiff[s]." *Roseboro,* 528 F.2d at 310. The Seventh Circuit in *Lewis* discussed summary judgment procedure in terms of general "lay intuition." *Lewis,* 689 F.2d at 102. The Eleventh Circuit in *Moore* cited as "controlling" precedent a case requiring that a nonprisoner litigant be notified of the duty under a local rule to respond to a motion to dismiss. *Moore,* 703 F.2d at 520 (citing *Mitchell v. Inman,* 682 F.2d 886, 887 (11th Cir.1982)). *Moore* supported its ruling with another nonprisoner case from the Fifth Circuit requiring the district court to afford a *pro se* civil rights litigant a meaningful opportunity to remedy defects in summary judgment materials. *Id.* (citing *Barker v. Norman,* 651 F.2d 1107, 1129 (5th Cir.1981)).

The majority's fear that the impartiality of the district court would be compromised were it to notify, or require notification to, *pro se* litigants of the written response requirements of Fed.R.Civ.P. 56 is wholly without merit. A court may legitimately assume that the attorneys who appear before it have been trained in legal procedure, and may just as legitimately assume that lay litigants have not. Courts, no less than the parties to a dispute, have an interest in the quality of justice. In assuring that notice is given a *pro se* litigant of the requirements of summary procedure, the court merely redresses a categorical disparity between the parties' abilities to obtain a just resolution to their dispute. The court does not thereby "becom[e] a player in the adversary process," *supra,* at 1366, but

rather ensures that the adversary process functions properly. "Summary judgment is not a catch penny contrivance to take unwary litigants into its foils and deprive them of a fair trial." *Whitaker v. Coleman*, 115 F.2d 305, 307 (5th Cir.1940) (quoted in *Barker v. Norman*, 651 F.2d at 1129 n. 26).

The majority's concern that a notice requirement would "invite an undesirable, open-ended participation by the court in the summary judgment process," *supra*, at 1365, is also without merit. Other circuits have trusted district courts to evaluate what form of notice is proper in light of a *pro se* litigant's capacities. *See, e.g., Hudson v. Hardy*, 412 F.2d 1091, 1094 (D.C.Cir. 1968) ("[B]efore entering a summary judgment against [a *pro se* litigant], the District Court, as a bare minimum, should [provide] him with fair notice of the requirements of the summary judgment rule. We stress the need for a form of notice sufficiently understandable to one in [the *pro se* litigant's] circumstances fairly to apprise him of what is required.") (quoted in *Barker v. Norman*, 651 F.2d at 1129 n. 26). *See also Roseboro v. Garrison*, 528 F.2d at 310 (the *pro se* litigant should "be advised of his right to file counter-affidavits or other responsive material and alerted to the fact that his failure to so respond might result in the entry of summary judgment against him.") This circuit has no reason not to likewise trust the courts below to exercise their discretion in this area appropriately.

Because I believe that both the law of this circuit and the interests of justice require that *pro se* litigants be notified of their procedural obligations under Rule 56, I respectfully dissent from Part I of the majority's opinion.