## Albert C. VICTORIA II, M.D.

### v.

## William A. O'NEILL, Audrey M. Worrell, Geraldine A. Roberts, David C. Sullivan, Francis K. Hayes, Luigi Saracino, Christiaan D. van der Velde, Renu Kothari, Rama Goyal, Anna Krzesicki, Patricia C. Lempecki, Richard D. Wilber, and John Doe.

### Civ. No. H–86–1467(JAC).

United States District Court,
D. Connecticut.

June 15, 1988.

---

Albert C. Victoria II, M.D., Tenafly, N.J., pro se.

Henry A. Salton, Office of the Atty. Gen., State of Conn., Hartford, Conn., for defendants.

## RULING ON MOTION FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, District Judge:

The complaint in this case arises from plaintiff's dismissal as a resident psychiatrist in training at Norwich State Hospital, which occurred amidst accusations that he had released a suicidal psychiatric patient

without authorization. In its Ruling on Pending Motions (filed June 24, 1987) ("Ruling of June 24, 1987"), the court dismissed all but three counts of the Amended Complaint (filed Nov. 19, 1986).

Construed liberally, the remaining counts —Counts Seven, Eight and Nine—assert slander claims against Dr. Van der Velde and Dr. Kothari and a libel claim against Dr. Worrell, all in their individual capacities. *See* Ruling of June 24, 1987, at 25, ¶ 7. Defendants Van der Velde and Kothari are alleged to have slandered plaintiff by publicly and falsely accusing him of releasing a patient without authorization. Defendant Worrell is alleged to have libeled plaintiff by relating this allegedly false accusation to United States Senator Lowell P. Weicker, Jr., of Connecticut and United States Representative Marge Roukema of New Jersey.

Defendants Van der Velde, Kothari, and Worrell all claim that their allegedly defamatory communications are protected by absolute privilege because they were made in connection with a quasi-judicial proceeding—that is, the administrative review of plaintiff's termination. Defendant Worrell alternatively claims that her statements are protected by a conditional privilege.

After discovery among the remaining parties consisting of an exchange of interrogatories and requests for production (to which there were some objections by both sides), the three remaining defendants moved for summary judgment on Counts Seven, Eight, and Nine. In response, plaintiff has renewed allegations of wide-spread conspiracy and corruption but has not filed the sort of papers in opposition contemplated by Fed.R.Civ.P. 56 or by Local Rule 9(c) (D.Conn.). Rather, his response takes the form of "Motions for Discovery and Time Enlargement or Summary Judgment" (filed Feb. 17, 1988) ("Plaintiff's Motions"), in which he claims, *inter alia*, that he needs more time for discovery. For the reasons set forth below, Plaintiff's Motions are DENIED, and defendants' motion for summary judgment is GRANTED.

## I.

Defendants filed their Motion for Summary Judgment on December 15, 1987. By normal reckoning, plaintiff would have been required to respond by January 6, 1988. By its Ruling on Pending Motions (filed Jan. 21, 1988) ("Ruling of Jan. 21, 1988"), however, this court granted plaintiff's motion for an extension of time (filed Dec. 7, 1987). That ruling gave plaintiff 21 days (until February 11, 1988) to file a motion for summary judgment and/or to respond to defendants' motion. The court at that time "cautioned, however, that no further extensions of time [would] be granted absent a showing of good cause, and that [plaintiff's] failure to file his submission(s) within twenty-one (21) days of the date of this order may result in the granting of defendants' motion for summary judgment. *See* Local Rule 9(a)(1)." Ruling of Jan. 21, 1988, at ¶ 6.

■ Notwithstanding this warning, instead of filing papers in response to defendants' motion for summary judgment, plaintiff filed the instant Plaintiff's Motions seeking, *inter alia*, an extension of time in which to obtain further discovery.[1] In fact, even this unresponsive motion was untimely filed on February 17, 1988, almost a week beyond the twenty-one days allotted. Even if plaintiff might reasonably have considered his motion to present "good cause" within the meaning of this court's ruling of January 21, 1988, plaintiff could have no legitimate expection of securing another extension of time unless he requested it within the deadline then applicable.

■ Furthermore, even if it had been timely, the request for time for more discovery would not have been granted. The request for discovery actually divides itself into two different requests: one to obtain

---

1. It is true that Plaintiff's Motions ask in the alternative for summary judgment in his favor. Inasmuch, however, as the motion is unsupported by a memorandum of law as required by Local Rule 9(a) (D.Conn.), or by a statement of material facts not in dispute as required by Local Rule 9(c)(1), or by any of the materials contemplated by Rule 56, Fed.R.Civ.P., it constitutes a bare assertion of a right to summary judgment and will receive no further attention.

further discovery both from defendants and from others, and a second to compel discovery previously sought from, but objected to by, the remaining defendants.

Insofar as the motion seeks time for new discovery, it largely attempts to pursue issues irrelevant to the remaining defamation counts. *See, e.g.,* Plaintiff's Motions at 5 (raising allegations of abuse of patients by hospital officials); at 7 (alleging improper experimentation in the use of drugs on patients). Furthermore, it comes long after the deadline for completion of discovery (November 2, 1987), *see* Ruling of June 24, 1987, at 25, and attempts without good cause further to delay action on defendants' motion for summary judgment.

■ Insofar as the motion seeks to compel answers to interrogatories already propounded by plaintiff, it would also have been denied even if it had been timely filed. Defendants objected to interrogatories one through five on November 30, 1987. On December 11, 1987, plaintiff moved to compel, but the motion was denied without prejudice to renewal for failure to comply with Local Rule 9(d)(5), which requires a memorandum of law in support of such motions. The renewal of this effort among Plaintiff's Motions of February 17, 1988, is still not in compliance with Local Rule

9(d)(5), nor does it comply with Local Rule 9(d)(4), which requires the moving party to file in support of a motion to compel an affidavit to the effect that he has conferred with counsel for the opposing party in a good faith effort to resolve the problem and has been unable to reach an agreement. This failure to observe the Local Rules would be more understandable had this court not already explicitly instructed plaintiff that discovery was to be conducted in accordance with those Rules, *see* Ruling on Plaintiff's Motion Filed October 7, 1987 (filed Nov. 10, 1987) at ¶ 4, and had it not already indicated its intention to require adherence to those rules by having denied at least one motion for failure to comply with them. Under the circumstances, the court can only regard the persistent evasion of the rules governing discovery as designed to delay the day of reckoning on defendants' motion for summary judgment.

■ Given the explicit warning of the court that no further extensions would be granted absent good cause and that failure to file his opposition to the motion for summary judgment in a timely fashion might itself be ground for granting the motion under Local Rule 9(a), the court believes it would be justified in doing just that pursuant to Local Rule 9(a).[2]

**2.** The court is mindful, of course, as it has been throughout this litigation, that Dr. Victoria is pursuing his cause of action pro se. It has attempted by its rulings to direct plaintiff's attention to the relevant rules, in the hope that it could simultaneously show the solicitude due to a pro se litigant and yet not sacrifice the contribution which procedural rules make to the orderly and fair resolution of legal disputes.

The court is also mindful of its obligation to notify a pro se litigant of the consequences which may attend a failure to respond to a motion for summary judgment, an obligation recently reiterated by our Court of Appeals in *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639 (2d Cir.1988). The court believes it has clearly met this obligation by its Ruling of Jan. 21, 1988.

The court is not aware of any decision of this Circuit which holds that a district court must do more than notify a pro se litigant of the *consequences* of a failure to respond to such a motion. It is true that there are intimations in some decisions of this Circuit that a district court must also inform a pro se litigant of the "nature" and "procedures" of a motion for sum-

mary judgment, *Sellers,* 842 F.2d at 642, or of the necessity of filing counter-affidavits if his opponent has filed affidavits in support of the motion, *see Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988) (discussing "whether summary judgment should be granted against a pro se litigant who does not know that he is expected to respond to such a motion or else suffer a judgment against him" and who may not know that if the moving party files affidavits, he must respond with counter-affidavits.) There is also the suggestion in *Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 767 (2d Cir.1983) that in addition to giving notice before conversion of a motion to dismiss to a motion for summary judgment, the court must inform a pro se litigant of the " 'requirements of the summary judgment rule,' " (quoting *Hudson v. Hardy,* 412 F.2d 1091, 1094 (D.C.Cir.1968) (per curiam)). None of these decisions, however, appear to this court to require more than notice to a pro se litigant that failure to respond to a motion for summary judgment may result in entry of judgment against him, which notice this court has already provided to Dr. Victoria.

First, in each of these cases the suggestion of a requirement of notice of more than the conse-

However, in the interest of an expeditious resolution of this issue, and in what it considers to be fairness to both sides, the court is inclined to address the motion for summary judgment on the merits insofar as it can on the record before it.

## II.

A court may grant summary judgment when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The initial burden is on the moving party to establish that there are no material facts in dispute. *See Heyman v. Commerce & Industry Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975). "Once a moving party has made a showing that no material issues of fact are in dispute, mere conjec-

ture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion." *Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2d Cir.1985). Where a motion for summary judgment is supported by documentary evidence and sworn affidavits in support of its position, the opposing party must present "significant probative evidence in the form of affidavits, depositions or answers to interrogatories sufficient to create a genuine issue of material fact." *Donovan v. Metropolitan District Counsel of Carpenters*, 620 F.Supp. 131, 133 (E.D.Pa.1985); *see also* Fed.R.Civ.P. 56(e). Summary judgment is appropriate where the resisting party fails to establish the existence of an element essential to that party's case at trial and upon which that

quences of a failure to respond appears to be dictum. The holding in *Beacon Enterprises* appears to be that it is reversible error for a district court not to give the ten-day notice provided by Fed.R.Civ.P. 12(b)(6) before converting a motion to dismiss to a motion for summary judgment. While the court went on to say that such notice is "particularly important" when a party is proceeding pro se, the decision seems to do no more than invoke on behalf of a pro se plaintiff a rule which it "ha[d] strictly enforced ... on other occasions." *Id.* In *Sellers*, the district court had not given a pro se party notice of the *consequences* of a failure to respond, so the court had no occasion really to reach the question whether a failure to inform the litigant of the "nature" or "procedures" of a motion for summary judgment was also error. Again in *Graham*, the result appears to depend upon the unfairness of granting summary judgment "against a pro se litigant who does not know he is expected to respond to such a motion or else suffer judgment against him," *Graham*, 848 F.2d at 344, and does not "know that in response to a motion for summary judgment he cannot rely on papers already filed," *id.* at 344. Furthermore, such suggestions as there are in these cases that the court must do more than notify a pro se litigant of the consequences of the failure to respond derive from citations to cases involving *incarcerated* pro se litigants. *Beacon Enterprises*, though it involved an unincarcerated pro se litigant, referred (in what this court has considered dictum) to cases in other circuits—most notably *Hudson v. Hardy*—which involved inmates proceeding pro se. In *Hudson*, 412 F.2d at 1094, for example, the court concluded that summary judgment could not be entered against such a litigant without prior notice of the "requirements" of the summary judgment rule. *Hudson* placed itself in a line of

cases which relied for its rationale upon the particular handicaps of incarcerated pro se litigants, including the lack of research facilities and the difficulty of securing documentary evidence. *See id.*

The Court of Appeals for the Ninth Circuit not long ago considered a question very close to the one before this court: whether an unincarcerated pro se litigant who has been given notice of the consequences of a failure to respond to a motion for summary judgment, also was entitled to advice from the court about such measures he had to take in order successfully to resist it. *See Jacobsen v. Filler*, 790 F.2d 1362 (9th Cir.1986). In that case, the court declined to extend the rule of *Hudson v. Hardy* to require that unincarcerated pro se litigants be informed of the necessity of filing counter-affidavits and other responsive matter. *See id.* at 1366–67. The court reasoned that "[i]mposing an obligation to give notice of Rule 56's evidentiary standards would also invite an undesirable, open-ended participation by the court in the summary judgment process." *Id.* at 1365.

For substantially the reasons stated in *Jacobsen*, and until it is instructed otherwise by our Court of Appeals, this court concludes that it need not advise an unincarcerated pro se litigant of the "nature" or "procedures" or "requirements" of a summary judgment motion, as long as the court does advise such a litigant of the consequences of a failure to respond.

Finally, in support of its conclusion that it could grant the instant motion simply for failure to respond after notice of the consequences of the failure to respond, the court notes that plaintiff's own repeated motions for extension of time in which to respond indicate that he is aware that he is not permitted simplyt to rest on his pleadings.

party will carry the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The burden on the resisting party is not altered simply because that party is a pro se litigant. "[A]t some point in a law suit even ... *pro se* litigant[s] must make clear to the court their claims and the facts that they believe entitle them to specific relief. The summary judgment stage is an appropriate juncture to identify the real issues in a case." *Salahuddin v. Coughlin*, 781 F.2d 24, 29 (2d Cir.1986).

Rule 9(c)(1) of the Local Rules of the District of Connecticut imposes on the moving party the requirement of annexing to the motion for summary judgment a "separate, short and concise statement" of the material facts which are not in dispute. Local Rule 9(c)(2) places a parallel burden upon the resisting party to include a "separate, short and concise statement of material facts as to which it is contended that there exists a genuine issue to be tried." Local Rule 9(c)(1) provides that the facts set forth by the moving party in accordance with that rule shall be deemed admitted unless controverted by the opposing party in accordance with Rule 9(c)(2). Local Rule 9(c)(3) makes clear that these requirements are in addition to those of Fed.R.Civ.P. 56.

Plaintiff has not provided the statement of disputed material facts required by the Local Rules. This failure occurred notwithstanding the fact that this court has on several occasions, including those mentioned above, specifically notified plaintiff that he had to comply with the Local Rules. *See, e.g.,* Ruling on Pending Motions (filed Jan. 21, 1988) at ¶ 3 (directing plaintiff's attention to Local Rule 9(a)(1)). Plaintiff also should have been alerted to the need for filing a statement of disputed facts by defendants' filing of their statement as required by Local Rule 9(c)(1). This omission by plaintiff leaves defendants' factual assertions uncontroverted and by itself might be ground to accept defendants'

statement of facts as admitted and to grant summary judgment to defendants if, on those facts, they are entitled to it as a matter of law. Such a result would be consistent with Local Rule 9(c)(1).

■ Even if the court excuses plaintiff's failure to comply with Local Rule 9(c), plaintiff has failed adequately to demonstrate the existence of a disputed issue of material fact as required by Fed.R.Civ.P. 56. Defendants have met their initial burden on this motion by providing documentary evidence and sworn affidavits to demonstrate that there is no disputed issue of material fact. Plaintiff, for his part, has failed to present "significant probative evidence" in *any* form "sufficient to create a genuine issue of material fact." [3] He has chosen to ask for further discovery instead of addressing the issues. His unsupported suggestion that evidence which is probative on his defamation claims remains in the hands of defendants is insufficient to justify denial of defendants' motion. *See Contemporary Mission, Inc. v. United States Postal Service*, 648 F.2d 97, 107 (2d Cir.1981).

For these reasons, the court denies the application for extension of time in which to conduct discovery and the motion to compel discovery, deems the facts as asserted in defendants' Statement of Material Facts As To Which There Is No Genuine Issue To Be Tried (filed Dec. 15, 1987) ("Statement of Facts") indeed to be undisputed, and proceeds to the question whether defendants are entitled to judgment as a matter of law.

### III.

Plaintiff's probationary employment at Norwich Hospital was terminated on June 4, 1984. *See* Statement of Facts ¶ 4. On October 1, 1984, plaintiff's request for an administrative review of the termination was granted. *See id.* at ¶ 5. David C. Sullivan was, at the time of plaintiff's dismissal, a personnel officer for the Connecticut Department of Mental Health. One of his duties was to perform an administrative review of the decision of Norwich

---

**3.** The court again notes that it believes it had no obligation to inform plaintiff of the necessity of filing any particular form of responsive matter before ruling on this motion. See note 2, above.

Hospital to terminate plaintiff's probationary employment. *See id.* at ¶¶ 6–7.

The allegedly defamatory statements made by defendants Kothari and Van der Velde "were made in the period of David Sullivan's investigation." Motion for Summary Judgment (filed Dec. 15, 1987), Exhibit I (Plaintiff's Response to Defendant Renu O. Kothari's Interrogatories) at 1 and Exhibit J (Plaintiff's Response to Defendant Christiaan van der Velde's Interrogatories) at 1. The allegedly defamatory statements made by defendant Worrell were made in communications to Senator Weicker and Representative Roukema in response to inquiries from them, which inquiries had in turn been prompted by communications from plaintiff. *See* Amended Complaint at ¶ 74; *see also* Statement of Facts at ¶¶ 14–18; Affidavit [of Audrey M. Worrell, M.D.] in Support of Defendant's Motion for Summary Judgment (filed Dec. 15, 1987) ("Worrell's Affidavit") at ¶¶ 5–13.

### Statements of Doctors Kothari and Van der Velde

#### A.

■ Whether an occasion is one to which a privilege attaches is a question of law. *See Charles Parker Co. v. Silver City Crystal Co.,* 142 Conn. 605, 615, 116 A.2d 440 (1955). The Connecticut Supreme Court has recently held that an absolute privilege attaches to pertinent statements made in connection with quasi-judicial administrative proceedings. *See Petyan v. Ellis,* 200 Conn. 243, 510 A.2d 1337 (1986). In so concluding, the Court explained:

It has long been established that there is an absolute privilege for statements made in judicial proceedings. There is a "long-standing common law rule that communications uttered or published in the courts or judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy." The effect of an absolute privilege is that damages cannot be recovered for a defamatory statement even if it is published falsely and maliciously. "The policy underlying the privilege is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements."

*Petyan v. Ellis,* 200 Conn. at 245–46, 510 A.2d 1337, 1338 (citations omitted).

The Court went on to discuss the category of proceedings to which an absolute privilege applies:

"It includes any hearing before a tribunal which performs a judicial function, ex parte or otherwise, and whether the hearing is public or not.... It extends also to the proceedings of many administrative officers, such as boards and commissions, so far as they have powers of discretion in applying the law to the facts which are regarded as judicial or 'quasi judicial' in character." This privilege extends to every step of the proceeding until final disposition. "[L]ike the privilege which is generally applied to pertinent statements made in formal judicial proceedings, an absolute privilege also attaches to relevant statements made during administrative proceedings which are 'quasi-judicial' in nature."

*Petyan v. Ellis,* 200 Conn. at 246, 510 A.2d 1337, 1338 (citations omitted). Finally, for our purposes, the Connecticut Supreme Court concluded also that "[t]he common law absolute privilege itself is not confined to the testimony of a witness but extends to any statement made in the course of a judicial proceeding, whether or not given under oath, so long as it is pertinent to the controversy." *Id.* at 251, 510 A.2d at 1341. The Court applied these principles to insulate defendants from damages for allegedly defamatory statements made on a "fact-finding supplement form" requested by the employment security division of the state labor department in connection with an application for unemployment compensation.

The rationale of the decision in *Petyan* suggests that the Connecticut courts would determine that an absolute privilege attaches to the statements made by defendants Kothari and Van der Velde. In particular, the statements in question—to the effect that plaintiff had released a suicidal

patient without authorization—were pertinent to a quasi-judicial administrative review proceeding, conducted at plaintiff's request by an official of the Connecticut Department of Health, to determine whether plaintiff's dismissal had been proper.

### Statements of Doctor Worrell
### B.

■ Dr. Worrell also asks this court to extend the protection of absolute privilege to her statements made to Senator Weicker and Representative Roukema because they were related to the administrative proceeding or, in the alternative, to find them protected by a conditional privilege.

Under Connecticut law, the "essential elements of a conditional privilege include good faith, an interest to be upheld or a duty to be performed, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner to proper parties only." Fain, Guman & Tobin, *The Law of Defamation in Connecticut*, 38 Conn.B.J. 420, 454–55 (1964); *accord* Wright and FitzGerald, *Connecticut Law of Torts* 330 (1968). "If an occasion of conditional privilege is established, it will be presumed that the communication, though defamatory, was made in good faith and without malice in fact." Fain Guman & Tobin, *supra* at 456–57. Thus, once an occasion of privilege is found, it is plaintiff's burden to rebut the presumption of good faith. Although summary judgment may normally be inappropriate where the moving party's motivation or state of mind is at issue, *see Wakefield v. Northern Telecom, Inc.*, 813 F.2d 535, 540 (2d Cir.1987), "[t]he state of mind exception ... is appropriate only where solid circumstantial evidence exists to prove plaintiff's case." *Clements v. County of Nassau*, 835 F.2d 1000, 1005 (2d Cir.1987). Furthermore, at least one Connecticut court has suggested that one who invites comment—as plaintiff in this case did, if only indirectly—is ordinarily in no position to complain if the resulting comment is adverse. *See Griffin v. Clemow*, 28 Conn.Supp. 109, 112, 251 A.2d 415, 417 (1968); *Prosser and Keeton, on the Law of Torts* § 114 (5th ed. 1984).

The Connecticut courts have held that a conditional privilege exists—and the presumption of good faith arises—under a number of circumstances which might be considered applicable here. These circumstances include, for example, comment by any citizen on matters of public interest, *see Griffin v. Clemow*, 28 Conn.Supp. at 112, 251 A.2d at 417, and comments made by "minor" public officials (that is officials other than the President or cabinet members or a governor) within the bounds of their governmental work, *see* Fain Guman & Tobin, *supra* at 332.

Accordingly, the court concludes that the Connecticut courts would consider Dr. Worrell to have been acting on an occasion of privilege when she answered the letters from Senator Weicker and Representative Roukema, and the presumption arises that she made the allegedly defamatory statements in good faith. This presumption is supported by the findings of David C. Sullivan, which findings resulted from an apparently complete and orderly administrative proceeding. Furthermore, there is nothing in the record to suggest that Dr. Worrell acted otherwise than in good faith. The questions remain, then, whether Dr. Worrell had an interest to be upheld or a duty to be performed, whether her statements were limited in scope to their purpose, and whether they were made on a proper occasion, in a proper manner, and to proper parties only.

On March 30, 1985, plaintiff wrote to Senator Weicker, complaining about "many problems with patient care and employee relations which are ignored by various hospital personnel." *See* Motion for Summary Judgment, Exhibit A. On or about April 25, 1985, Dr. Worrell, then Commissioner of Mental Health for the State of Connecticut, received a letter in which Senator Weicker asked her to investigate plaintiff's allegations. *See* Motion for Summary Judgment, Exhibit C. Plaintiff, a citizen of New Jersey, wrote to Representative Roukema on January 27, 1985, asking assistance in obtaining "reinstatement without malice or prejudice, proper Residency Training, payment for work which I performed, and most importantly, to have my reputation cleared." Motion for Summary

Judgment, Exhibit B. On or about June 5, 1985, Dr. Worrell received a letter from an aide of Representative Roukema, who passed along plaintiff's correspondence and asked Dr. Worrell to conduct a "complete and thorough review of [his] concerns" and to provide "a full report of [the] findings." Motion for Summary Judgment, Exhibit D.

Dr. Worrell responded to both of these requests in July of 1985. In both responses Dr. Worrell characterized plaintiff's accusations as serious and went on to say: "To place these allegations in perspective it is important to understand that Dr. Victoria was involuntarily separated from the Psychiatric *Residency* Program at Norwich Hospital due to unacceptable performance during his *probationary* period." Motion for Summary Judgment, Exhibits E and F (emphasis in originals). With both letters were included, *inter alia*, copies of the findings of the administrative review of the termination of plaintiff's employment. *See id.*

Even assuming that these statements were libelous, *see* Ruling of June 24, 1987, at 20–21, Dr. Worrell was conditionally privileged in making them. Plaintiff himself set in motion the chain of communication which ended in Dr. Worrell's communications to public officials. Senator Weicker, as Senator from Connecticut, arguably had a duty to investigate allegations about the conduct of health care in his state. Representative Roukema had at least a moral obligation to consider the problem of a citizen of the state which she represents who had been an employee of a state agency in Connecticut. As Commissioner of Mental Health, Dr. Worrell had an interest in monitoring and a duty to oversee the operations at Norwich Hospital, *see* Worrell's Affidavit at ¶ 4, and an interest in responding to questions concerning the conduct of affairs in the area of her responsibility when they were raised by other public officials with legitimate interests in them. Under these circumstances, Dr. Worrell had "an interest to be upheld or a duty to be performed" in answering the letters of Senator Weicker and Representative Roukema. While the inclusion of material regarding plaintiff's discharge from Norwich Hospital may have been more obviously pertinent to matters raised by plaintiff's letter to Representative Roukema, the court finds that plaintiff's letter to Senator Weicker, the basis of the Senator's inquiry to Dr. Worrell, also raised such questions as Dr. Worrell could reasonably have thought were put in better perspective by including information about plaintiff's discharge. Dr. Worrell's responses to both of these inquiries were made on a proper occasion, were appropriately limited in scope, and were published in a proper manner to proper parties only.

In light of the uncontroverted facts, the court concludes that Dr. Worrell was protected by a conditional privilege, which she did not abuse, and is entitled to judgment as a matter of law. Under these circumstances, it is not necessary to reach the question whether Dr. Worrell also enjoyed the protection of an absolute privilege.

## CONCLUSION

For the reasons stated above, Plaintiff's Motions are DENIED, and the motion for summary judgment of defendants' Kothari, Van der Velde, and Worrell—the only remaining defendants in this case—are GRANTED. Plaintiff is reminded that the court will only consider a motion for reconsideration of this ruling if it is timely filed. *See* Local Rule 9(e).

It is so ordered.