**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EARNEST CASSELL WOODS, II,
        *Plaintiff-Appellant,*

v.

TOM L. CAREY, Warden; T.
DICKENSON; CERVANTES,
        *Defendants-Appellees.*

No. 09-15548

D.C. No.
2:04-cv-01225-
LKK-GGH

EARNEST CASSELL WOODS, II,
        *Plaintiff-Appellee,*

v.

TOM L. CAREY, Warden; T.
DICKENSON,
        *Defendants,*

and

SANTOS CERVANTES,
        *Defendant-Appellant.*

No. 09-16113

D.C. No.
2:04-cv-01225-
LKK-GGH

OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence K. Karlton, Senior District Judge, Presiding

Argued and Submitted
April 18, 2012—San Francisco, California

Filed July 6, 2012

7871

Before: Stephen Reinhardt, John T. Noonan, and
Mary H. Murguia, Circuit Judges.

Opinion by Judge Reinhardt

## COUNSEL

Erica Griffith (argued) and Jeffrey T. Renz, Missoula, Missouri, for the plaintiff-appellant.

Jennifer Marquez (argued), Sacramento, California, for the defendant-appellee.

## OPINION

REINHARDT, Circuit Judge:

We hold in this case that *Rand* and *Wyatt* notices must be served concurrently with motions to dismiss and motions for summary judgment so that pro se prisoner plaintiffs will have fair, timely and adequate notice of what is required of them in order to oppose those motions. Notices served at a time when defendants have not yet filed motions to dismiss or motions for summary judgment (and may never file such motions) do not sufficiently serve that purpose.

## INTRODUCTION

Earnest Cassell Woods, formerly an inmate at California State Prison, Solano, sued Warden Tom Carey and Appeals Coordinator Santos Cervantes under 42 U.S.C. § 1983 for deliberate indifference to his medical needs due to the improper denial of two grievance forms seeking dental care.[1] First, the district court granted Carey's motion for summary judgment, concluding that Woods failed to connect him to the

---

[1]Woods initially named both of Solano's appeals coordinators as defendants in his suit, alleging in his complaint that he was unaware which individual was responsible for denying his grievances. The second coordinator, Tom Dickenson, moved for summary judgment on the basis that he was not a party to the challenged conduct and his motion was granted. This decision is not appealed by Woods.

alleged deprivation of his constitutional rights.[2] Subsequently, it granted the defendants' motion to dismiss for failure to exhaust administrative remedies, but only as to one of the two grievances.[3] After proceeding to trial on the remaining grievance, Woods obtained a jury verdict against Cervantes, the only remaining defendant. Woods appeals the district court's grant of the motion for summary judgment in favor of Carey as well as the motion to dismiss in favor of both defendants as to the purportedly unexhausted grievance. He asserts that he was not provided fair notice of the requirements necessary in order to oppose the motions.[4] We agree that the notice provided by the district court, which preceded the filing of the motion for summary judgment by over a year and the motion to dismiss by more than two years, did not provide fair notice to Woods, a pro se prisoner plaintiff. We hold that notice required under *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc), and *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003), must be provided to pro se prisoner plaintiffs at the time the defendants' motions are filed.

## BACKGROUND

While incarcerated at California State Prison, Solano,

---

[2]The court granted Carey's motion for summary judgment on Woods's claims against him in his individual capacity, but, because Woods also requested injunctive relief, Carey remained a defendant in his official capacity as Solano Warden. This claim was ultimately dismissed as moot before trial, when Woods was transferred out of the Solano facility. The suit proceeded to trial with Cervantes as the only remaining defendant.

[3]The filing of the motion to dismiss followed the filing of the summary judgment motion due to an intervening ruling by the Supreme Court in *Woodford v. Ngo*, 548 U.S. 81 (2006), which held that the exhaustion requirement under the Prison Litigation Reform Act is not satisfied if a grievance is denied as untimely. *Id.* at 87.

[4]Woods also appeals a number of other rulings of the district court, and Cervantes challenges the judgment against him on cross-appeal. We reject those objections and affirm the district court in all other respects in a separate memorandum disposition filed concurrently herewith.

Woods filed a request to receive dental care to fix his broken partial dentures on October 16, 2002. He received an acknowledgment from the prison's dental services department informing him that he was placed on the wait list to receive dental care, that the expected waiting time was several months, and that he would be contacted when it was his turn. After a year had passed without his receiving any treatment to address this issue or any further notification from dental services, Woods filed a grievance form on November 27, 2003, seeking immediate care. He was informed by dental services that he had been removed from the wait list. Woods continued to attempt to exhaust his administrative remedies by filing a formal level appeal. On December 3, 2003, Woods filed another grievance, again seeking immediate dental care, this time due to a broken tooth caused by his attempt to eat with the broken partial denture. He was again informed that his name was not on the list to receive dental care and instructed to make a formal request to be placed on the list. Woods filed a formal level appeal of this grievance as well. Both grievances were screened out at the formal-appeal level by Cervantes.

Woods filed a civil suit under 42 U.S.C. § 1983, alleging that Cervantes's responses repeatedly and incorrectly screened out his grievance forms, prevented him from properly exhausting his claims and impeded his access to necessary dental treatment. Woods alleged that Cervantes's intentional interference with his attempts to receive dental care amounted to a violation of his Eighth Amendment right. Woods also named Carey as a party, and alleged that the warden was also responsible for preventing him from obtaining the necessary treatment.

On October 14, 2004, shortly after Woods filed his amended complaint, the district court issued an order directing service on the defendants by the United States Marshal. Included in this five-page order was a notice to the plaintiff advising him of the requirements for opposing a motion for

summary judgment, or a motion to dismiss for failure to exhaust administrative remedies, as required under *Rand*, 154 F.3d 952, and *Wyatt*, 315 F.3d 1108, respectively. Neither motion had been made at the time. The notice specified that Woods was required to present affidavits, declarations, or other forms of evidence to defeat any such motions, and that any affidavits or declarations submitted must be signed. It also informed Woods that failure to defeat either motion would result in the termination of his suit.

More than a year later, in December 2005, the defendants filed a motion for summary judgment. The motion was accompanied by a sworn declaration, made under penalty of perjury, by Carey stating that between August 15, 2002 and September 22, 2004, he "never had any conversations with plaintiff regarding delay of dental treatment or the [grievance] appeals process . . . [and] never received any complaints from plaintiff regarding the . . . appeals process." In response, Woods filed his opposition, which did not conform with the requirements outlined in the *Rand* notice. As a result, his opposition was stricken, and the magistrate judge reviewing the motion relied only on Woods' verified complaint and attached exhibits. Woods did not submit a copy of a letter that he had in his possession that he had written to Carey, and was marked as received by him on March 4, 2003. In the letter, Woods explained that he was "trying everything that [he could] do to exhaust [his] state remedies so that someone will hear [his] appeal in the court system if not in the state Department of Corrections," and complained that Cervantes was improperly screening out his grievances and thereby preventing him from exhausting his appeals. The letter also stated that Woods was aware that "Cervantes has been violating the rights of other African Americans while filing appeals," and that Carey had received "numerous other complaints," and asked that the warden "pay attention to" this conduct. It was signed and dated by Carey with the notation "To: S. Cervantes. For your review," and was stamped "Received" on March 5, 2003 by the Solano Appeals Office. A copy of this letter

was not produced by Woods until September, 2008, when he included it as a proposed trial exhibit, two years after summary judgment had been granted for Carey. In granting summary judgment to Carey in his individual capacity on September 28, 2006, the court adopted the report and recommendations of the magistrate, which found that Woods had failed to support his claim against Carey with specific allegations. It also specifically credited Carey's statement that he was "unaware of plaintiff 's allegations." On the first day of trial in February 2009, Woods learned, apparently for the first time, that Carey had been dismissed as a party. Woods's claim against Cervantes survived the summary judgment motion.[5] The court concluded that Woods's condition constituted a serious dental need, and that it was clearly established that he had a right to adequate dental care and that improperly preventing him from obtaining that care could amount to a constitutional violation.

In December, 2006, the defendants filed a motion to dismiss for failure to exhaust administrative remedies under *Woodford*, 548 U.S. at 90-93. In addition to filing an opposition to the defendants' motion, Woods submitted a series of objections and a request for judicial notice. All of Woods's filings, with the exception of his initial opposition, were stricken by the district court as improper. In adopting the recommendations of the magistrate, the district court found with respect to the grievance filed on November 23, 2003, that Woods had followed the proper procedure and it was Cervantes's attempts to give him "the run around" that prevented him from successfully exhausting the administrative process. It allowed Woods's claim based on this grievance to go forward, but dismissed the December 3, 2003 grievance after finding that Woods failed to timely submit his formal-level appeal.

---

[5]Woods's claim against Carey in his official capacity for injunctive relief had initially survived, but was subsequently dismissed as moot when Woods was transferred out of Solano prior to trial.

After his thirteen motions requesting counsel were denied, Woods proceeded to trial unrepresented. After a two-day jury trial, he won a verdict against Cervantes and received an award of $500 in compensatory damages and $1000 in punitive damages. Despite this limited success, Woods appealed a number of the district court's rulings, including its grant of summary judgment for Carey and its grant of the defendants' motion to dismiss the portion of his claim related to the December 3rd grievance. Represented by pro bono counsel on appeal, Woods contends that the district court failed to provide fair notice of what was required of him in order to defeat the defendants' motions, and he requests that we reverse the orders entered against him and remand with instructions to the district court to provide sufficient notice if the defendants re-file their motions.

## DISCUSSION

**[1]** In *Klingele v. Eikenberry*, 849 F.2d 409, this court held that "[d]istrict courts are obligated to advise prisoner pro per litigants of Rule 56 requirements." *Id.* at 411-12 (9th Cir. 1988). Ten years later, in *Rand*, we reaffirmed this rule. 154 F.3d at 953. In doing so, we recognized that the "unique handicaps of incarceration," including prisoners' limited access to legal materials, constraints on their abilities to obtain evidence, and difficulties monitoring the progress of their cases, among other limitations, created special problems for pro se prisoner plaintiffs. *Id.* at 958. These additional hardships required that affirmative steps be taken to ensure that "a prisoner's access to the courts is adequate, effective, and meaningful." *Id.* (quoting *Bounds v. Smith*, 430 U.S. 817, 822 (1977)) (internal quotation marks omitted). Thus, we held that pro se prisoner plaintiffs must receive fair notice of the requirements needed to defeat a defendant's motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**[2]** In *Rand*, we described in detail the necessary elements of the written notice that must be provided to the pro se pris-

oner litigant to sufficiently apprise him of the requirements to defeat a motion under Rule 56. *Id.* at 960-61. Adequate fair notice required that the litigant be provided, in plain, understandable language, notice of his right to file counter-affidavits or other evidentiary material, that his failure to do so may result in summary judgment against him, and that his loss on summary judgment would terminate the litigation. *Id.* We also included in our opinion a model notice to advise district courts and future litigants of the acceptable language to be used to convey these requirements to subsequent pro se prisoner plaintiffs. In *Wyatt* we extended this notice requirement and instructed that "if the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust . . . then the court must assure that [the plaintiff] has fair notice of his opportunity to develop a record." 315 F.3d at 1120 n.14. Thus, after *Wyatt*, fair notice of the requirements needed to defeat a defendant's motion to dismiss for failure to exhaust administrative remedies must also be provided to a pro se prisoner litigant.

**[3]** In our discussions in *Rand* and *Wyatt*, we did not expressly articulate any temporal requirement for the provision of notice. The language used by this court in *Rand*, including the language of the incorporated model notice, presumed, however, that notice would be provided at the time of the defendant's motion for summary judgment. For instance, the first sentence of the model notice states: "The defendants *have made a motion for summary judgment* by which they seek to have your case dismissed." *Rand*, 154 F.3d at 962-63 (emphasis added). In its discussion of who bears responsibility for providing this notice to plaintiffs, the court recognized that the "summary judgment *movant*" may furnish this notice, as long as it is presented separately from the papers filed in support of the defendant's motion. *Id.* at 960 (emphasis added). In both of these references to the provision of notice, the court took for granted that a motion for summary judgment would have already been made; it is this motion that the court recognized triggers the duty to provide fair notice.

The Ninth Circuit is among the majority of circuits that have adopted a fair notice requirement for pro se prisoner plaintiffs. *Graham v. Lewinski*, 848 F.2d 342, 345 (2d Cir. 1988); *Renchenski v. Williams*, 622 F.3d 315, 340-41 (3rd Cir. 2010); *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam); *United States v. Ninety-Three Firearms*, 330 F.3d 414, 427-28 (6th Cir. 2003); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982); *Nickens v. White*, 622 F.2d 967, 971 (8th Cir. 1980); *Griffith v. Wainwright*, 772 F.2d 822, 825 n.6 (11th Cir. 1985); *Hudson v. Hardy*, 412 F.2d 1091, 1094 (D.C. Cir. 1968). *Contra Martin v. Harrison Cnty. Jail*, 975 F.2d 192, 193 (5th Cir. 1992) (per curiam). Like our circuit, other circuits have not heretofore explicitly required that notice must be provided at the time of the summary judgment motion, although they have similarly presumed that such would be the case. Among those with similar presumptions are the Second Circuit, *Graham*, 848 F.2d at 345 ("The State has represented to us that in the future, *whenever it moves for summary judgment* in a suit in which the opposing party is an incarcerated pro se litigant, it will include an easily comprehensible notice . . . . We regard that as a sensible course to follow." (emphasis added)), the Seventh Circuit, *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992) ("Counsel should include this notice *with the summary judgment motion*, but if they fail to do so this responsibility will fall on the district court." (emphasis added)), and the D.C. Circuit, *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992) ("[W]e hope that in future cases, counsel for incarcerating governmental defendants will assist district judges in bearing their burden by including *in motions for summary judgment* directed at actions by pro se plaintiffs, a short and plain statement . . . ." (internal citation omitted) (emphasis added)). It is the D.C. Circuit's opinion in *Hudson v. Hardy*, 412 F.2d 1091 (D.C. Cir. 1968), that provided the basis for our circuit's recognition of the fair notice requirement. *See Jacobsen v. Filler*, 790 F.2d 1362, 1364 n. 4 (9th Cir. 1986). The assumption that the required notice will be given contemporaneously with the summary judgment motion is prevalent, even though not explicitly announced by

these courts as an affirmative requirement. Given that the purpose of the fair notice requirement is to ensure that unsophisticated and unassisted litigants do not succumb to "procedural booby traps [that] could prevent [them] from ever having their day in court," *Rand*, 154 F.3d at 958 (quoting *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966)) (internal quotation marks omitted), it is essential that such notice be provided at the time when the defendants' motions are made, not a year or more in advance. Otherwise, the "procedural booby traps" we sought to avoid in *Rand* may well prevent pro se prisoners "from ever having their day in court."

**[4]** In addition to the implicit presumptions of this court and others that the necessary fair notice is to be provided at the time of the defendant's motions, the recognized circumstances facing prisoner litigants also support adopting such an explicit requirement. In *Rand*, as well as in the precedents upon which it relied, we acknowledged some of the hardships of pro se prisoner plaintiffs. Among them was the prisoners' limited ability to obtain legal material. *See Rand*, 154 F.3d at 958; *Jacobson*, 790 F.2d at 1364 n. 4. This limited access includes restrictions on a prisoner's ability to obtain access to, or even retain, his own legal files. In this case, for instance, Woods was moved within and between prisons during the course of this litigation and repeatedly complained to the court that he was being denied access to his legal material. *See, e.g.*, **DKT 53:2** (noting that Woods had been moved within the prison and that staff had reportedly rummaged through his belongings); **DKT134: 17-19** (appeals form noting Woods's complaints about his limited access to his legal papers and the denial of his requests to gain access to those papers); **DKT 123:1** (noting Woods's move to Soledad prison). Woods is among many prisoners who have had limited access to their own legal documents over the course of their detention, or who have alleged the loss or destruction of relevant materials by prison officials. *See, e.g., Vigliotto v. Terry*, 873 F.2d 1201, 1202 (9th Cir. 1989) (prisoner's legal documents for his self-represented appeal lost after being

removed from cell by prison officials); *DeWitt v. Pail*, 366 F.2d 682, 684 (9th Cir. 1966) (per curiam) (prison officials confiscated the prisoner's legal papers as a disciplinary measure); *Monroe v. Beard*, 536 F.3d 198, 204 (3rd Cir. 2008) (prison officials confiscated prisoners' contraband and non-contraband legal materials); *United States v. Gabaldon*, 522 F.3d 1121, 1124 (10th Cir. 2008) (denial of prisoner's access to his legal papers while he was held in segregation for two months); *Adams v. Carlson*, 488 F.2d 619, 623 (7th Cir. 1973) (prisoners' legal papers confiscated by prison officials and not returned). Distributing a generic notice at the outset of litigation does not help alleviate these hardships affecting pro se prisoner plaintiffs. The provision of detailed explanations of what the litigant must do in response to motions that have not yet been filed, may never be filed, or, as in this case, will not be filed for a considerable time to come, is likely to serve little purpose at the time of receipt or afterwards. The notice is apt to be lost, forgotten, or rendered inaccessible by the time it becomes necessary for the litigant to marshal a response. The only satisfactory practice to ensure that prisoners receive adequate notice pursuant to *Rand* and *Wyatt* is to provide such notice at the time that the relevant motions are filed. We express the same faith as other circuits in "trust[ing] that counsel for the defendants in prisoner civil rights cases in this circuit will lift this new burden from the judges' shoulders, by henceforth including in any motion for summary judgment [or motion to dismiss] in a case where the plaintiff is not assisted by counsel a short and plain statement [as required under *Rand* and *Wyatt*]." *Lewis*, 689 F.2d at 102. If, however, such defendants fail to provide appropriate notice, "the ultimate responsibility of assuring that the prisoner receives fair notice remains with the district court." *Rand*, 154 F.3d at 960.[6]

---

[6]Because the defendants in pro se prisoner cases are ordinarily institutional officials or employees, and are represented by the Attorney General or other counsel regularly retained by the governmental entities involved, we express no view as to the methods the district court may employ, including sanctions, to ensure that defendants provide proper notice rather than imposing that burden on the overworked district courts.

**[5]** We appreciate the district court's effort to provide notice as a matter of course at the outset of litigation in an attempt to ensure that pro se prisoner plaintiffs routinely receive adequate notice. Nonetheless, the issuance of the *Rand* and *Wyatt* notices prior to any motion by the defendants, and, as in this case, preceding the filing of the relevant motions by a substantial period of time, rendered this routine dissemination ineffective. The reason for the rule of timely notification is illustrated by the case before us. Woods had in his possession a letter explicitly informing Carey of Cervantes's conduct of improperly preventing inmates from exhausting their administrative appeals, signed by Carey, which flatly contradicted the assertions made in Carey's sworn statement, which formed the basis for the grant of his summary judgment motion. Woods appears to have recognized the value of this document, but believed that he would be able to present it at trial. Had he been timely apprised that the submission of such evidence was necessary to defeat the defendants' summary judgment motion at the time that the motion was made, it is very unlikely that summary judgment would have been granted.

**[6]** The failure to provide adequate *Rand* notice is a ground for reversal unless it is clear from the record that there are no facts that would permit the inmate to prevail. *Rand*, 154 F.3d at 962 n.9. Here, quite the opposite is true. If Woods had presented the evidence in his possession that Carey was aware that Cervantes was improperly impeding access to the grievance process he might well have prevailed against Carey. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A supervisor is only liable for constitutional violations of his subordinates if the supervisor . . . knew of the violations and failed to act to prevent them."). Reversal therefore is the proper remedy. The same is true with regard to the motion to dismiss. Woods might well have been able to provide evidence that he attempted to exhaust his December 3rd grievance and was prevented from doing so by prison officials. If the district court determined that his failure to exhaust was caused by

Cervantes's conduct or that of other prison officials, his failure to exhaust would not have provided a ground for dismissal of his claim. *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009) ("[W]e reverse the district court's dismissal of the case for failure to appeal properly because the appeals process was unavailable to him."). We therefore reverse the district court's grant of both motions, and direct that on remand Woods be provided with proper notice if and when the defendants re-file either or both of the relevant motions. The rule we adopt here shall apply in all pending and future cases.

**REVERSED and REMANDED**