**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KEONE LABATAD,
      *Plaintiff - Appellant*,

v.

CORRECTIONS CORPORATION OF
AMERICA; DAREN SWENSON,
Regional Director of Operations at
Corrections Corporation of America;
TODD THOMAS, Warden at Saguaro
Correctional Center; BENJAMIN
GRIEGO, Assistant Warden at
Saguaro Correctional Center;
MARCO LOPEZ, Chief of Security at
Saguaro Correctional Center;
TIMOTHY DOBSON, Unit Manager at
Saguaro Correctional Center,
      *Defendants - Appellees*.

No. 12-15019

D.C. No.
2:10-cv-02619-
ROS

OPINION

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, Chief District Judge, Presiding

Argued and Submitted
April 12, 2013—Pasadena, California

Filed May 1, 2013

Before: Marsha S. Berzon and Richard C. Tallman,
Circuit Judges, and Lee H. Rosenthal, District Judge.[*]

Per Curiam Opinion

## SUMMARY[**]

### Prisoner Civil Rights

The panel affirmed the district court's summary judgment in a 42 U.S.C. § 1983 action in which a prison inmate sought damages and injunctive relief based on an assault by a member of a rival prison gang, with whom plaintiff was temporarily assigned to share a cell.

The panel first held that the district court did not err deciding the summary judgment motion despite the court's failure to send notice pursuant to *Rand v. Rowland,* 154 F.3d 952 (9th Cir. 1998) (en banc), until approximately one month after the defendants filed their motion and a day after plaintiff filed his response. The panel held that despite the late *Rand* notice, plaintiff did not suffer a deprivation of substantial rights when the district court decided the summary judgment motion on the merits. Plaintiff's response demonstrated that he understood the nature of summary judgment and complied with the requirements of Rule 56.

---

[*] The Honorable Lee H. Rosenthal, United States District Judge for the Southern District of Texas, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the undisputed evidence in the record showed that the defendants were not deliberately indifferent to a substantial risk of an attack if the two inmates were placed in a cell together. The panel held that the district court therefore properly granted the defendants' motion for summary judgment.

## COUNSEL

Molly Lens (argued), Victor Jih, and Vartanoush Defterderian, O'Melveny & Myers, LLP, Los Angeles, California; Ella Hushagen (argued), UCLA School of Law Ninth Circuit Clinic, Los Angeles, California, for Plaintiff-Appellant.

Nicholas D. Acedo (argued), Daniel P. Struck, and David C. Lewis, Struck, Wieneke & Love, PLC, Chandler, Arizona, for Defendants-Appellees.

## OPINION

PER CURIAM:

Keone Labatad appeals from the judgment dismissing his 42 U.S.C. § 1983 claim that actions taken by correctional officials at the Saguaro Correctional Center (SCC) violated his Eighth Amendment rights. Labatad sought damages and injunctive relief based on an assault by a member of a rival prison gang, with whom he was temporarily assigned to share a cell. The District Court rejected Labatad's claims that the defendants were deliberately indifferent to the risk he faced

from the cell assignment.    We have jurisdiction under 8 U.S.C. § 1291, and we affirm.

## I.

Keone Labatad was a State of Hawaii inmate incarcerated at the SCC.    Although the SCC tracks inmates' gang affiliations, it does not have a policy of separating rival gang members in cell assignments.  Instead, gang affiliation is one factor in the case-by-case evaluations used to make such assignments.

On July 23, 2009, Labatad had a fight with another inmate, Howard Giddeons.  Labatad was a member of the La Familia gang, and Giddeons was a member of the USO Family gang.  The fight did not produce serious injuries.  A guard noticed that Labatad's face was swollen and scratched, and prison officials investigated.  Both Labatad and Giddeons told the investigators that the fight was not gang related. Both said that they bumped against each other passing on the stairs, took offense, arranged to meet in Labatad's cell, and fought.  Both reported that after the fight, they shook hands and had no further issues.

Following usual practice, prison officials placed the inmates involved in the fight in administrative segregation during the investigation.  Labatad was assigned to share a cell with Shane Mara, who, like Giddeons, was a member of the USO Family gang.  Labatad and Mara had known each other during the extended period both were in general population at the SCC.  There had been no difficulties between them. Mara had not threatened Labatad and was not identified as someone who should be kept separate from Labatad or was likely to do him harm.

Three days later, Mara assaulted Labatad, punching him in the head and back.  The assault occurred just after Labatad had been placed in hand restraints in preparation for being escorted out of the cell.  Guards waiting outside the cell door to escort Labatad promptly intervened.  The doctor who treated Labatad testified that he had a welt on his back and a bloody—but not broken—nose.  Labatad asserts that his nose was bent to the left and is still crooked.

Prison officials investigated the fight between Mara and Labatad.  Mara told the investigators that he assaulted Labatad because he was a La Familia member and Mara thought that Labatad would attack unless he did so first.

Labatad sued the Corrections Corporation of America (CCA) and its regional operations director; the SCC warden, assistant warden, and chief of security; and Labatad's SCC unit manager.  Labatad alleged that the decision to house him in the same cell with a member of a rival gang after he had fought with another member of that same gang violated his Eighth Amendment rights.  Labatad challenged both the general policy that allowed rival gang members to be housed in the same cell and the specific decision to place him in the cell with Mara.  He sought $100,000 in damages and a change in SCC policies to require separation of inmates by gang affiliation.[1]

After discovery, on August 19, 2011, the defendants moved for summary judgment on two grounds: (1) Labatad had failed to exhaust his administrative remedies because he had not filed a grievance for 15 months after the incident; and

---

[1] Labatad has since been released, making his additional request for transfer to a different facility moot.

(2) the record showed that, as a matter of law, the defendants had not acted with deliberate indifference in housing Labatad with Mara. Labatad filed a detailed, thorough, and extensive response on September 14, 2011.

On September 15, 2011, the District Court sent Labatad the notice required under *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc). The notice did not acknowledge that Labatad had already responded to the summary judgment motion. On October 3, 2011, the defendants filed a reply to Labatad's response.

On December 14, 2011, the District Court issued its decision. It declined to grant the motion on the basis of failure to exhaust, noting that the court had not provided notice addressing the defendants' exhaustion arguments. *See Stratton v. Buck*, 697 F.3d 1004, 1008 (9th Cir. 2012) ("[W]hen a district court will consider materials beyond the pleadings in ruling upon a defendant's motion to dismiss for failure to exhaust administrative remedies, the pro se prisoner plaintiff must receive a notice, similar to the notice described in *Rand*."). The District Court granted the defendants' motion for summary judgment on the merits of the Eighth Amendment claim. The court acknowledged that it had sent the *Rand* notice after Labatad had already responded to the summary judgment motion, but found that it was nonetheless proper to decide the motion on the merits.

The District Court rejected Labatad's claim that by allowing rival gang members to be housed in a single cell, the defendants committed a *per se* Eighth Amendment violation. The District Court also found that the record evidence showed that, as a matter of law, the defendants had not acted with deliberate indifference in housing Labatad with Mara.

In reaching that conclusion, the District Court disregarded four affidavits Labatad had submitted from other inmates stating that there had been other violent incidents between members of the La Familia and USO Family gangs housed in shared cells at the SCC. The District Court based this decision on its conclusion that the affidavits did not show that the affiants had personal knowledge of the events they described.

This timely appeal followed.

## II.

The threshold issue is whether the District Court erred in deciding the summary judgment motion despite its failure to send the *Rand* notice until approximately a month after the defendants filed their motion and a day after Labatad filed his response.

The purpose of the *Rand* notice is to give a pro se prisoner litigant "fair notice" of the requirements and consequences of the summary judgment rule because of the "complexity of [that] rule combined with the lack of legal sophistication of the pro se prisoner." *Rand*, 154 F.3d at 960. The notice must "apprise an unsophisticated prisoner of his . . . rights and obligations under Rule 56"; inform the prisoner of his "right to file counter-affidavits or other responsive evidentiary materials and be alerted to the fact that the failure to do so might result in the entry of summary judgment against the prisoner"; and inform the prisoner of "the effect of losing on summary judgment." *Id.* (citations omitted). Our cases have emphasized the importance of having the notice sent at a time when it will effectively serve these purposes. In *Woods v. Carey*, 684 F.3d 934, 935 (9th Cir. 2012), we found that a

*Rand* notice sent too early in the litigation—in that case, over a year before the Rule 56 motion was filed—was insufficient. We emphasized that "the only satisfactory practice to ensure that prisoners receive adequate notice pursuant to *Rand* . . . is to provide such notice at the time the relevant motions are filed." *Id.* at 940. The premature *Rand* notice was inadequate because it was "apt to be lost, forgotten, or rendered inaccessible by the time it becomes necessary for the litigant to marshal a response." *Id*.

In this case, the notice was not sent too long before the summary judgment motion was filed, but too long after. By the time he received his *Rand* notice from the District Court, Labatad had already filed his response. The requirement that the *Rand* notice be filed "at the time the relevant motions are filed" means just that. The *Rand* notice must issue so that the litigant will receive the motion and the notice reasonably contemporaneously.

The delay in sending the *Rand* notice to Labatad was error. The question is whether the District Court's decision to decide the summary judgment motion despite that error requires reversal and remand. We conclude it does not.

This court has held that "harmless error review is inappropriate in most cases" involving a failure to send a timely *Rand* notice. *Rand*, 154 F.3d at 961. Such review often requires courts to engage in the "burdensome task of assessing each particular litigant's sophistication in legal matters," including the "impossible task of attempting to divine whether an individual inmate understood what was at stake if he failed to put all of his evidence before the court." *Id.* But in the "unusual case where the harmlessness of the failure to give the required notice may be established on the

record or by judicial notice," harmless error review is appropriate. *Id.* at 961. In *Rand*, the court described an example of such an unusual case as one in which an "objective examination of the record" discloses that the litigant has a "complete understanding of Rule 56's requirements." *Id.*

This is one of the unusual cases in which the record, objectively examined, demonstrates the "harmlessness of the failure to give the required notice." *Id.* Labatad's response to the summary judgment motion included his own detailed declaration thoroughly setting out his knowledge of the facts. It included citations to, and quotes from, legal authorities, including Rule 56, and stated the Rule's legal standard for summary judgment. The response complied with the local-rule requirements by including a separate statement of disputed facts identified to correspond to the defendants' statement of facts supporting summary judgment. Labatad attached as exhibits, and cited from, materials the defendants had provided in discovery, including excerpts from the defendants' responses to requests for admission and a CCA memo on the limited role of gang affiliation in making inmate housing assignments. Labatad also attached sworn affidavits by four inmates describing other instances of violence from rival gang members sharing a cell. Labatad's response to the defendants' summary judgment motion fully complied with the instructions in the *Rand* notice. The record, objectively viewed, shows that Labatad knew and understood the information in the *Rand* notice before he received it.

Labatad suggests that had he received an earlier *Rand* notice or a later clear instruction that he could have supplemented his response, he could have added to the affidavits from the four inmates. The District Court found

those affidavits incompetent as summary judgment evidence because they did not show the affiants' personal knowledge. But nothing in the *Rand* notice or in a statement of a right to supplement would have given Labatad specific instructions on what more the affidavits needed to make them competent evidence. The affidavits already stated that the affiants had personal knowledge of what was described, showing Labatad's prior awareness of the personal knowledge requirement. And, as explained below, even if the affidavits are considered part of the summary judgment evidence, the outcome is unchanged.

Despite the late *Rand* notice, Labatad did not suffer a deprivation of substantial rights when the District Court decided the summary judgment motion on the merits. *See* Fed. R. Civ. P. 61. His response demonstrates that he understood the nature of summary judgment and complied with the requirements of Rule 56. Thus, reversal and remand of the District Court decision is not required.

## III.

The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). A prisoner seeking relief for an Eighth Amendment violation must show that the officials acted with deliberate indifference to the threat of serious harm or injury to an inmate. *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002). "Deliberate indifference" has both subjective and objective components. A prison official must "be aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists, and . . . must also draw the inference." *Farmer*, 511 U.S. at 837.  Liability may follow only if a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

The District Court found that the SCC's policy of permitting members of different gangs to be housed together was not itself an Eighth Amendment violation.  As the Seventh Circuit observed in a similar case, among other problems, "[t]he number of gang members housed . . . and the high representation of certain gangs would place an unmanageable burden on prison administrators were they required to separate inmates by gangs." *Mayoral v. Sheahan*, 245 F.3d 934, 939 (7th Cir. 2001).  At argument, Labatad's counsel clarified that he was not asserting a *per se* Eighth Amendment violation.  Instead, he alleged that the defendants were deliberately indifferent to the risk of harm from the cell assignment with Mara.

The record, viewed objectively and subjectively, is insufficient to preclude summary judgment on the claim that SCC prison officials were deliberately indifferent to a substantial risk that Mara would assault Labatad if the two were housed in the same cell.  Mara and Labatad had been in general population together for an extended period with no record of any threats or problems between them.  Mara was not listed as a "separatee" for Labatad.  The added fact that Labatad had fought three days earlier with a member of Mara's gang is not a basis to find deliberate indifference.  Prison officials had been assured by both Labatad and Giddeons that their fight was not gang related and that there were no further issues between them.  Labatad  argues that the record supports an inference of subjective awareness of

the risk because of his evidence that he told an SCC officer that he should not be housed with Mara.  But Labatad provided no specifics about this conversation.  Without more, such as information about who Labatad spoke to or what he said, we cannot infer that any of the defendants or officials responsible for making the assignment were aware that Labatad faced a substantial risk of harm.  *See Wood v. Beauclair*, 692 F.3d 1041, 1051 (9th Cir. 2012) (concluding that prison supervisors lacked knowledge of the risk in part because the prisoner "never disclosed [the sexual abuser's] actions to prison officials until long after the incidents at issue in this case occurred").  While the failure to give advance notice of a specific threat is not dispositive, there is no other evidence in the record showing that the defendants knew of facts supporting an inference and drew the inference of a substantial risk to Labatad if he was placed in a cell with Mara.

Moreover, consideration of the four inmate affidavits excluded by the District Court would not have altered the outcome of this case.  One of the affiants, a USO Family member, states that he has been housed in administrative segregation with La Familia members, but he does not say whether those housing assignments resulted in violent incidents.  Two of the affidavits describe an assault that occurred after Labatad was attacked by Mara, making them irrelevant to show the defendants' awareness of a substantial risk of housing Labatad with Mara.  Although the affidavits mention two assaults before Labatad's incident with Mara, without context and with no apparent connection to Labatad and Mara aside from the gang affiliations of the respective participants, they, too, are insufficient to show deliberate indifference.

**IV.**

The undisputed evidence in the record shows that the defendants were not deliberately indifferent to a substantial risk of an attack if Mara and Labatad were placed in a cell together. The District Court properly granted the defendants' motion for summary judgment.

We **AFFIRM**.