OPINION OF THE COURT
Jack M. Battaglia, J.
The verified complaint of plaintiff Andrea Diaz alleges that she sustained injury as a result of a fall at premises owned by defendant New York Comprehensive Cardiology, PLLC, where she was being treated by defendant Sanjeev Palta, M.D. By order to show cause, plaintiffs counsel moves for an order, pursuant to CPLR 321 (b) (2), permitting counsel to withdraw. An attorney’s affirmation in support asserts that “[djuring the course of discovery in this litigation, the Plaintiff and this firm have come to a disagreement as to how to proceed with the litigation, which disagreement cannot be resolved”; and that “[i]n light of the above irreconcilable differences concerning the manner in which to proceéd, the attorney-client relationship between the Plaintiff . . . and the office of the undersigned, has been irreparably compromised.” (Attorney’s affirmation ¶¶ 4, 5.) Counsel submit a copy of a retainer agreement dated August 21, 2008, signed by plaintiff; the agreement does not address the possibility of counsel’s withdrawal from the representation.
Courts have permitted counsel to withdraw on grounds of “irreconcilable differences” (see Misek-Falkoff v Metropolitan Tr. Auth., 65 AD3d 576, 577 [2d Dept 2009]) and a “breakdown in the attorney-client relationship” (see Musachio v Musachio, 80 AD3d 738, 738 [2d Dept 2011]), in the cited cases based upon nonpayment of legal fees. Here, it became apparent on the hearing of counsel’s motion that counsel’s ground for seeking permission to withdraw is more accurately found in the Rules of Professional Conduct, which replaced the former Code of Professional Responsibility on April 1, 2009.
Rule 1.16 permits an attorney to ethically withdraw from representing a client when the client’s claim or defense “is not warranted under existing law and cannot be supported by good faith argument for an extension, modification, or reversal of existing law” (see Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.16 [c] [6]). Courts have found circumstances permitting withdrawal under the former Disciplinary Rule to the same effect. (See Code of Professional Responsibility DR 2-110 [c] [22 NYCRR 1200.15 (c)]; Walker v Mount Vernon Hosp., *761 5 AD3d 590 [2d Dept 2004]; Positano v Maimonides Med. Ctr., 238 AD2d 560, 561 [2d Dept 1997]; Wells v Community Hosp. at Glen Cove, 120 AD2d 584, 585 [2d Dept 1986].) But courts have also found the circumstances not to warrant withdrawal pursuant to the rule. (See Willis v Holder, 43 AD3d 1441, 1441 [4th Dept 2007]; LeMin v Central Suffolk Hosp., 169 AD2d 821, 821 [2d Dept 1991]; Rann v Lerner, 160 AD2d 922, 922 [2d Dept 1990].) Rule 1.16 recognizes that some prejudice might result from the termination of the representation, even where withdrawal is permitted or required. (See Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.16 [e].)
Since an attorney presumably will not accept representation of a client whose claim or defense is sufficiently questionable so as to allow later withdrawal under the rule—or, at least, should not (see Estate of Miolan v State of New York, 39 Misc 3d 1076, 1078 [Ct Cl 2013])—counsel’s “negative reassment of the merits of the plaintiffs case” (see Wells v Community Hosp., 120 AD2d at 585) must be based on some change in circumstances as the matter progressed. (See Kramer v Salvati, 88 AD2d 583, 583 [2d Dept 1982] [withdrawal purportedly based on letter of medical expert more than three years after action commenced where court found letter indicated some merit to action].)
Here, counsel asserts a change of circumstances in a material difference between Ms. Diaz’s description of the circumstances of her fall at the time the action was commenced and upon her recent examination before trial. Counsel does not contend that Ms. Diaz was ever less than truthful in her communications with counsel, or otherwise failed to cooperate with a proper investigation of her claim. On her part, Ms. Diaz, whose first language was Spanish, does not contend that she was not able to adequately communicate with counsel. For all that appears, any difference in Ms. Diaz’s account of her fall was the result of miscommunication or misunderstanding, perhaps occasioned or exacerbated by language.
This court has not attempted to reconstruct the course of communications between Ms. Diaz and counsel from July 2008, when counsel accepted her as their client, and her recent examination before trial, nor to assess the adequacy of Ms. Diaz’s and counsel’s respective participation in the interviewing and counseling process, as might be appropriate, if not necessary, when an attorney is seeking to withdraw because the client has failed to cooperate or otherwise made it unreasonably difficult for the attorney to perform effectively. (See Rules of Profes *762 sional Conduct [22 NYCRR 1200.0] rule 1.6 [c] [7].) Here, even if the court were able to locate the time and source of the miscommunication or misunderstanding, and were to ascribe some fault to counsel for its occurrence, the court is left with counsel’s contention that continuation with the representation would be inconsistent with the ethics of the profession (see Rules of Professional Conduct [22 NYCRR 1200.0] rule 3.1; former Code of Professional Responsibility DR 7-102 [A] [2] [22 NYCRR 1200.33 (A) (2)]; Cohen v Tzimas, 135 Misc 2d 335, 337 [Sup Ct, NY County 1987]; Rindner v Cannon Mills, 127 Misc 2d 604, 606-607 [Sup Ct, Rockland County 1985]). Moreover, without determining that the ethical and regulatory standards are necessarily the same, the court notes that an attorney who pursues a meritless claim or defense risks costs and sanctions pursuant to administrative rules (see Rules of Chief Admin of Cts [22 NYCRR] § 130-1.1 et seq.).
The limited New York appellate case law on the issue articulates no standard for review of an attorney’s application for leave to withdraw based upon lack of sufficient merit of a claim or defense. It seems clear that an application to withdraw is no more appropriate a vehicle for judicial determination of the merits of a claim or defense than it is to resolve an insurance coverage dispute (see McDonald v Shore, 100 AD3d 602, 603 [2d Dept 2012]). A judicial determination based upon a necessarily incomplete record risks prejudice to all of the parties. Indeed, except for the rare case where the plaintiff is an attorney (see Positano v Maimonides Med. Ctr., 238 AD2d at 561), the risk is greatest for the party whose attorney is seeking to withdraw.
In McCoy v Court of Appeals of Wis., Dist. 1 (486 US 429 [1988]), the United States Supreme Court stated:
“A lawyer, after all, has no duty, indeed no right, to pester a court with frivolous arguments, which is to say arguments that cannot conceivably persuade the court, so if he believes in good faith that there are no other arguments that he can make on his client’s behalf he is honor-bound to so advise the court and seek leave to withdraw as counsel.” (486 US at 436, quoting United States v Edwards, 777 2d 364, 365 [7th Cir 1985]; see also Vaughn v American Tele. & Tele. Corp., 1998 WL 760230, *1, 1998 US Dist LEXIS 17129, *3 [SD NY, Oct. 30, 1998, No. 96 CIV 0989 (LAK), 96 CIV 6068 (LAK)].)
*763 In Rindner v Cannon Mills (127 Misc 2d 604 [1985]), Supreme Court stated that, where an attorney seeks leave to withdraw based on insufficient merit of the claim or defense, “the attorney’s judgment cannot be the subject of scrutiny unless there is some affirmative evidence of bad faith” (see id. at 606, citing Kirsch v Duryea, 21 Cal 3d 303, 578 P2d 935 [1978]; see also Frank v Capital Cities Communications, Inc., 1991 US Dist LEXIS 13228, *3 [SD NY, Sept. 3, 1991, No. 80 Civ 2188 (CSH)]).
The court is aware of a thoughtful opinion from the U.S. District Court for the Northern District of New York that rejects a “good faith” standard, at least in medical malpractice actions. (See Ehle v United States, 2006 US Dist LEXIS 37687 [ND NY, June 8, 2006, No. 1:05-CV-189 (DNH/RFT)].) Magistrate Treece states:
“Although the courts should give some weight to an attorney’s good faith belief as to the merit of the case, to focus on that attorney’s subjective belief at the expense of an objective assessment is, in fact, the court jettisoning its responsibility and practicing judicial imprudence. If courts yielded to every attorney’s subjective belief, we would have bedlam within our judicial system, flooded with attorneys withdrawing from cases upon a whim and displeasure, and utter chaos would rein.” (See id. at *28.)
This court does not suggest, however, that an attorney’s bald assertion of good faith should in itself end the matter. That “good faith” is essentially a subjective concept does not mean that it is a concept without content that cannot be determined by a court by judicial process (see HSBC Bank USA v McKenna, 37 Misc 3d 885, 904-908 [Sup Ct, Kings County 2012]; see also Wells Fargo Bank, N.A. v Meyers, 108 AD3d 9, 17 [2d Dept 2013]). Nor does a “good faith” standard require that, in a medical malpractice action where expert opinion is likely to be available (see CPLR 3012-a), or in any case where that or other evidence is in fact available, the evidence must be ignored in determining the attorney’s professed “good faith.” (See Kramer v Salvati, 88 AD2d at 583.) Nor does a “good faith” standard preclude the articulation of principles of general application, such as that “good faith” is not established where “counsel might feel that the amount of potential recovery does not warrant the effort of a trial” (see Cohen v Tzimas, 135 Misc 2d at 337).
*764 Perhaps most importantly, a “good faith” standard does not preclude the court’s assessment of the prejudice to the party whose attorney is seeking to withdraw, as well as the other party or parties and the court itself. (See Wells v Community Hosp., 120 AJD2d at 585.) The delay necessarily resulting from staying the action for some period of time to allow the, now unrepresented, party to obtain new counsel, and other practical consequences that may result from a change of attorneys the closer the case gets to trial, are perhaps the most obvious, but not most serious, sources of prejudice. Here, defendants have not opposed the motion.
It would be foolhardy to expect that most parties whose attorneys have successfully withdrawn will be able to obtain new counsel. Whatever the basis of permitted withdrawal, and certainly where it is based on insufficient merit of the claim or defense, prospective new counsel will, understandably, be reluctant to accept the representation. The practice of in camera submission, while well-intentioned and probably necessary in many cases (see Jessamy v Doran Group, 36 Misc 3d 1220[A], 2012 NY Slip Op 51408[U] [Sup Ct, Westchester County 2012]; see also Positano v Maimonides Med. Ctr., 238 AD2d at 561]), may actually exacerbate the problem.
A “good faith” standard, which limits judicial assessment of the merits of the claim or defense, might make it easier for the party whose attorney has been allowed to withdraw to find new counsel. To say that two knowledgeable and competent attorneys might in good faith disagree on the merits of a claim or defense requires no citation for support. A judicial determination as to the merit of a claim or defense in the context of a withdrawal motion would stand on different footing, although perhaps it should not.
It is unavoidable that parties who were previously represented by counsel will find that they must proceed on their own, in many cases facing a motion for summary judgment that is perhaps encouraged by the permitted withdrawal of the party’s former counsel. One must assume prejudice from proceeding unrepresented, even when compared to the questionable value of compelled representation by an attorney who has lost faith in the client’s claim or defense. It is often said, “A litigant appearing pro se acquires no greater right than any other litigant.” (See Roundtree v Singh, 143 AD2d 995, 996 [2d Dept 1988]; see also Matter of Evert, 72 AD3d 1081, 1082 [2d Dept 2010].)
Such a laudable principle of fairness, however, has not inhibited the federal courts from requiring that the court apprise an *765 unrepresented litigant of the nature and consequences of an opposing party’s motion for summary judgment, including the consequences of failing to make an appropriate response. (See Sawyer v American Fedn. of Govt. Empls., AFL-CIO, 180 F3d 31, 34-36 [2d Dept 1999]; see also Woods v Carey, 684 F3d 934 [9th Cir 2012]; Rand v Rowland, 154 F3d 952, 962-963 [9th Cir 1998] [form notice]; Lewis v Faulkner, 689 F2d 100 [7th Cir 1982].) As stated by Judge Posner:
“The lack of explicit notice would not be troubling if it were obvious to a layman that when his opponent files a motion for summary judgment supported by affidavits he must file his own affidavits contradicting his opponent’s if he wants to preserve factual issues for trial. But this aspect of federal civil practice is contrary to lay intuition, which is that the first step in a civil litigation is the filing of a complaint, the second the filing of an answer, and the third the trial of the case.” (See id. at 102.)
No similar requirement has as yet been imposed for summary judgment practice in the New York State courts, either by rule or judicial decision, but it should be. Although it is clear that a summary judgment motion should be denied unless the movant makes the requisite prima facie showing, even if no opposition is made to the motion (see Yonkers Ave. Dodge, Inc. v BZ Results, LLC, 95 AD3d 774, 774-775 [1st Dept 2012]), this court has seen a disquieting number of short-form orders in which summary judgment is granted only “on default” or “without opposition.”
Returning to the pending motion, as stated above, counsel has shown a change of circumstances since commencement of the representation that has led to a reassessment of the merits of plaintiff’s claim. Counsel supports its asserted good faith, based upon reference to applicable ethical principles, with a signed statement waiving any retaining lien or charging lien to which it would otherwise be entitled, waiving all claims for legal fees and return of disbursements, and agreeing to release its file to plaintiff within five days of an order permitting counsel’s withdrawal.
As also stated above, there is no contention of misconduct by either Ms. Diaz or counsel. The changed circumstances as explained to the court do not suggest that counsel does not in good faith hold its current opinion as to the merits of Ms. Diaz’s claim, nor is there anything else that has been brought to the *766 court’s attention that would suggest that counsel is not acting in good faith in seeking permission to withdraw. The court has made no other assessment of the merit of plaintiffs claim, either now or as initially asserted.
The case is not yet on the trial calendar. Although a compliance conference order requires that the note of issue be filed by October 11, 2013, that order is not a 90-day notice pursuant to CPLR 3216, and so the failure to file the note of issue by that date cannot be the basis of dismissal or other “disposition” of the action (see Arroyo v Board of Educ. of City of N.Y., 110 AD3d 17, 18-22 [2d Dept 2013]). Neither the statute (see CPLR 3402) nor court rule (see Uniform Civ Rules for Sup Ct & County Ct [22 NYCRR] § 202.21) specifies any deadline for filing a note of issue; and, under the circumstances here, the court may further extend the date for filing (see CPLR 2004).